## No. 12,678.

PEOPLE EX REL. SHAKLEE ET AL. *v.* MILAN.

(5 P. [2d] 249)

Decided November 9, 1931.

Mr. WILLIAM R. KELLY, Mr. M. E. H. SMITH, for plaintiff in error.

Mr. S. E. NAUGLE, Mr. T. A. NIXON, for defendant in error.

Messrs. PONSFORD & PENDER, amici curiae.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

Ross I. Shaklee and Mike Milan were rival candidates for the office of director of the second division of the Henrylyn Irrigation District, a public and quasi municipal corporation. The directors' canvass of the votes cast at the election resulted in a determination that Milan had been successful; a certificate of election was thereupon issued and delivered to him, and he thereafter duly qualified and is now acting as a director of the Henrylyn District. Ross I. Shaklee, the unsuccessful candidate, contends that certain errors, mistakes and irregularities occurred at the election, but for which he would have been declared elected; he thereupon took the oath of office; tendered his statutory bond, and demanded the office, which was refused him. With the consent of the

district attorney, and by leave of the district court, Shaklee and others began this action in the nature of quo warranto under the provisions of chapter 28, Code of Civil Procedure, 1921, to obtain a judicial determination of his claim to the office. Upon the trial, the district court found and determined that Milan had been legally elected and was regularly qualified as director, and rendered its judgment accordingly.

Shaklee prosecutes this writ, assigning as error certain adverse rulings of the trial court respecting the qualifications of voters at the election; cross-errors are also assigned as to adverse rulings. The trial court determined this matter upon stipulated and undisputed facts, and it may be said that the only difference between the parties arises over the proper construction to be given that portion of section 1963, C. L. 1921 (Session Laws of 1917, p. 292, section 2), fixing the qualifications of voters under the Irrigation District Act. The portion of this act with which we are particularly concerned reads as follows: "At all elections held under the provisions of this act every *owner,* or entryman of agricultural or horticultural land within said district, over the age of twenty-one years, who is a citizen of the United States, or has declared his intention to become a citizen of the United States, and is a resident of the State of Colorado, and who shall have paid property taxes upon the real property located within said district *during the calendar year preceding any such election* shall be entitled to vote at such election in the precinct where he resides, or, *if a non-resident of the precinct, then in the precinct within which the greater portion of his land is located;* * * * All lands platted or *subdivided into residence or business lots shall not be considered agricultural or horticultural land, unless used exclusively for agricultural or horticultural purposes* by the *owner who shall reside thereupon* and *cultivate said lands as a farmer, gardener or horticulturist."* (Italics ours.)

It was stipulated that Hudson and Keenesburg are in-

corporated towns within the irrigation district, and that the plats of said towns on file in the office of the county assessor of Weld county, showing the subdivision of the lands within the towns into business and residence lots and blocks, are accepted as correct; that where one of several tenants in common has paid taxes on real property within the irrigation district, it shall be deemed to have been paid in behalf of and by each tenant in common, and further, that payment of either general or irrigation taxes on real property in the irrigation district shall be considered as a payment of property tax thereon.

The questions submitted to the trial court for its determination were: (1) The right of co-tenants to vote; (2) the right of those holding contracts to purchase lands within the district to vote; (3) the meaning of the phrase "during the calendar year preceding any such election" as the same is used in section 1963, C. L. 1921; (4) when a voter is otherwise qualified, must his vote be cast in the precinct within which the greater portion of his land is located? (5) Are owners of town lots, upon which they reside and have gardens, entitled to vote at district elections?

The trial court found as a matter of law: "1. Co-tenants, that is to say, tenants in common of record title to land, are entitled to vote, and such votes are legal. 2. That those who have only contracts to purchase, are not entitled to vote. 3. That the words 'calendar year preceding such election' mean in this case, the year 1928, beginning January 1st, 1928, and ending December 31st, 1928. 4. That those votes cast in the wrong precinct, should not be counted. 5. That owners of town lots with gardens thereon are, under this statute, entitled to vote."

It is conceded by counsel that the Henrylyn Irrigation District was organized in the year 1907 under the provisions of the irrigation district act of 1905, chapter 113, p. 246, and is now operating under, and is controlled by, the 1905 act and amendments thereto.

█ It is within the exclusive power and province of

the legislature to fix and determine the qualifications of voters in all public and quasi municipal corporations, and all reasonable provisions with reference thereto will be upheld. In *People v. Lee,* 72 Colo. 598, 607, 213 Pac. 583, it is said: "Whether owners of land have any right to participation in the administration of quasi municipal corporations 'by vote or otherwise' is a political question merely. The right of the legislature to create a quasi municipal corporation and provide for the manner of its administration and the personnel of its officers in any manner it may see fit, is well established. *People v. Earl,* 42 Colo. 238, 94 Pac. 294."

The plaintiff in error contends that the trial court erred in determining: (1) That owners of town lots, under the stipulated facts, were entitled to vote; (2) that holders of contracts of purchase were not entitled to vote; (3) that voters, otherwise qualified, must vote in the precinct in which the greater portion of their lands lie. The defendant in error contends that the trial court erred in determining, (1) that tenants in common, otherwise qualified, might vote, and (2) assigns errors as to specific votes.

It may be said that acts in this state concerning irrigation districts were enacted to enable those interested in the development and increased productivity of their lands to organize public and quasi municipal corporations for the purpose of securing water for irrigation, and to provide ways and means of applying that water to the soil. Upon those interested and benefited the burden must necessarily fall, and it is reasonable to assume that these interested parties should, within certain limits, be the ones most vitally concerned with the economic problems and the efficient administration of the district. The legislative department has recognized this principle of self-government, with reference to irrigation districts, and has accordingly prescribed certain qualifications for those who participate in the economic and elective matters of the district.

The first irrigation district act in Colorado, providing for the organization and government of irrigation districts, was enacted in 1901, Session Laws of Colorado, 1901, page 198. The portion of that act relating to the qualifications of voters at district elections reads: "No person shall be entitled to vote at any election held under the provisions of this act unless he shall be a qualified elector and the owner of real estate in such district." S. L. '01, 201.

In 1905, the legislature enacted a statute repealing the 1901 act, supra, with certain exceptions, and re-enacted a more complete and comprehensive irrigation district statute. Session Laws of Colorado, 1905, page 246. The portion of the 1905 act with reference to the qualifications of voters at all elections held under the 1905 act reads: "At said election and all elections held under the provisions of this act, all persons who are qualified electors within said proposed district and are resident freeholders and shall have paid a property tax in said proposed district during the year preceding such election shall be entitled to vote, and none others." S. L. '05, 249.

In 1907, an amendment to the 1905 act, supra, was enacted, and the qualifications of the voters were further limited: "At all elections held under the provisions of this act all persons shall be entitled to vote, who are resident freeholders of agricultural lands within said district, or who are the owners of lands to the extent of forty acres or more within said district and reside within any county into which any part of said dstrict shall extend, and who are qualified electors under the general laws of the state therein and who shall have paid property taxes upon property located within said district during the year preceding any such election. Electors not residing within the district shall be entitled to vote only within the division of such district wherein their lands or a major portion thereof are located; * * *." S. L. '07, 488, et seq.

562

In 1915 an amendment to the 1907 act, supra, was enacted, in which the qualifications of voters were further restricted: "At all elections held under the provisions of this act every owner of agricultural land within said district, over the age of twenty-one years, who is a citizen of the United States, or has declared his intention to become a citizen of the United States, and is a resident of the State of Colorado, and who shall have paid property taxes upon the property located within said district during the year preceding any such election, shall be entitled to vote at such election in the precinct where he resides, or, if a nonresident of the *precinct,* then in the precinct within which the greater portion of his land is located; * * * All lands platted or subdivided into residence or business lots shall not be considered agricultural land. * * *." S. L. '15, 300.

The 1915 act was amended in 1917, as hereinbefore set forth, and this amendment is the legislative act controlling in the election in question.

In 1921, a new act entitled "An Act Concerning the Organization, Management and Dissolution of Irrigation Districts" was passed, from the provisions of which, districts formerly organized were expressly exempted unless by election, as therein provided, it should be determined that the irrigation districts theretofore organized should be affected thereby; and, inasmuch as the irrigation district in question did not so elect, the 1921 law does not control the affairs of this district. However, the provisions of the 1921 act respecting the qualifications of voters at elections therein provided, reads: "At all elections held under the provisions of this Act everh (every) owner of agricultural land within said district, over the age of twenty-one years, who is a citizen of the United States, or has declared his intention to become a citizen of the United States and is a resident of the State of Colorado, and who shall have paid real property taxes upon the property located within said district on an area in excess of one acre during the year pre-

ceding the date of said election, if a resident of the district, or on an area of 40 acres or more, if a resident of the State outside the district, or who shall be an entryman upon public lands of the United States and be residing thereon, shall be entitled to vote at such election in the precinct where he resides, or, if a non-resident of the *precinct,* then in the precinct within which the greater portion of his land is located  *  *  *.  All lands platted or subdivided into residence or business lots shall not be considered agricultural land.''  S. L. '21, 521, et seq.

No other legislation respecting the qualifications of voters at elections in irrigation districts was passed until 1931, when the 1921 act, supra, was amended to read as follows:  ''At all elections held under the provisions of this Act, every owner, or entryman of agricultural or horticultural land within said District, over the age of twenty-one years, who is a citizen of the United States, or has declared his intention to become a citizen of the United States, and is a resident of the State of Colorado, and who shall have paid property taxes upon real property located within said District during the calendar year preceding any such election shall be entitled to vote at such election in the Precinct where he resides, or, if a non-resident of the *Precinct,* then in the Precinct within which the greater portion of his land is located;  *  *  * All lands platted or subdivided into residence or business lots shall not be considered agricultural or horticultural land  *  *  *.''  S. L. '31, 432.

A comparative and careful study of the legislative acts, with reference to the qualifications of voters in irrigation districts, convinces us that the legislature purposed and intended to place the ultimate power and responsibility of determining all questions of policy affecting the irrigation districts upon the owners of the agricultural and horticultural lands therein.

The word ''owner'' as used in the 1917 act, supra, means the person who has the dominion over the agricultural or horticultural land with power to enjoy

564

and do with it as he pleases, so long as he does not violate the law; it means the person who has the legal title to the land. In *McFeters v. Pierson,* 15 Colo. 201, 203, 24 Pac. 1076, it is said: "It is true, the term 'owner,' when used alone, imports an absolute owner, or one who has complete dominion of the property owned, as the owner in fee of real property; but the meaning of a word is often varied according to the connection in which it is used, and is to be understood according to the subject-matter to which it relates." In the dissenting opinion in *Elder v. Schumacher,* 18 Colo. 433, 444, 33 Pac. 175, Mr. Justice Elliott, who wrote the opinion in the McFeters v. Pierson case, supra, thus defined the word "owner," as used in the code action for possession and damages for the detention of real estate: "The term 'owner,' when thus used, imports an absolute owner—as the owner in fee of real property." There is nothing in the 1917 act, supra, to indicate that the word "owner" as used therein was intended in any other than its usual and customary meaning, and every purpose for which the irrigation law was passed will be subserved by limiting its meaning to those who have the title to real estate. We therefore conclude that the trial court did not err in refusing to allow those holding contracts to purchase real estate within the district the right of franchise at irrigation district elections.

■ The statute further required that one, otherwise qualified, must have paid property taxes upon real property located within the district during the calendar year preceding any such election. In all statutes with reference to tax qualifications of voters, passed prior to the 1917 act, supra, the qualifying words were "during the year preceding any such election," but the 1917 amendatory act changed the language to that above quoted. If, as contended, the phrases are identical in meaning, and are interchangeable, we fail to give any effect whatsoever to the new words in the 1917 amendatory act, and this would be violative of all rules of construction. The

trial court correctly construed the phrase, "during the calendar year preceding any such election" to mean the year beginning January 1, 1928, and ending December 31, 1928. *People v. Escheman,* 63 Colo. 227, 229, 165 Pac. 260; *Sherman v. J. S. Brown Co.,* 78 Colo. 335, 337, 241 Pac. 724.

█ The 1917 act, supra, further provided that one being otherwise qualified to vote at an irrigation district election, but who was a nonresident of the precinct (irrigation district), might do so in the precinct in the district in which the greater portion of his land was located. At the time of the election under consideration, an unusual storm made it impractical for some of the voters to journey to the voting place in the precinct where the greater portion of their land was located, and the precinct election officers permitted some of the voters to cast their votes in a precinct other than the one in which the greater portion of their land was located. The trial court properly ruled that such votes were void. The elective franchise, in irrigation matters, is a privilege, and one who would enjoy it must strictly comply with all the requirements which the legislature prescribes as a prerequisite to the right to vote, and must possess all the qualifications; otherwise he may not have his vote counted.

█ The 1917 act, supra, provides: "All lands platted or subdivided into residence or business lots shall not be considered agricultural or horticultural land, unless (1) used exclusively for agricultural or horticultural purposes (2) by the owner who shall reside thereupon and (3) cultivate said lands as a farmer, gardener or horticulturist." (Numbers in parentheses ours.) The trial court ruled that a number of residents of Hudson and Keenesburg, who were the owners of town lots and used the same for residential purposes, but, in addition thereto, had gardens similar to those usually found in all yards where space is sufficient, were entitled to vote. The 1917 act, supra, was amendatory of the 1915 act, supra,

the 1915 act providing that all lands platted or subdivided into residence or business lots shall not be considered agricultural lands. The stipulated facts as to the lot owners and their agricultural and horticultural pursuits are fairly indicated as follows: "J. W. Baldwin * * * owns and resides on lots 28, 29, 30, block 64, Hudson, where his dwelling is located. On lots 29 and 30 are a garage, coal house, closet, chicken house, flowers, fourteen fruit trees, lawn, garden, 20 by 40 feet, and shrubbery, five shade trees." It appears that he is a hardware merchant in Hudson. This evidence does not indicate that Baldwin uses his lots exclusively for agricultural or horticultural purposes, and cultivates the same as a farmer, gardener or horticulturist. The purpose of the 1917 amendment is obviously to permit exceptions where farmers, gardeners, and horticulturists are carrying on in a bona fide way their business as such on town lots in sparsely settled portions of incorporated towns and cities. The trial court erred in determining that the lot owners in the towns of Hudson and Keenesburg were entitled, under the provisions of the 1917 act, supra, to vote at irrigation district elections.

■ The trial court held that tenants in common, if otherwise qualified, were entitled to vote. Tenants in common hold several and distinct titles, with unity of possession. In the instant case these several and distinct titles were in fee simple, and each owner is considered solely and severally seized of his separate share. 7 R. C. L. 818; 38 Cyc. 4; Tiedeman on Real Property (3d Ed.) 236; *Madison v. Larmon,* 170 Ill. 65, 70, 48 N. E. 556; 3 Kerr on Real Property, 1907.

■ The trial court did not err in determining that the tenants in common were each entitled to vote at the irrigation district election.

The trial court correctly construed the statute, except in the particulars herein noted, but when applying the correct interpretation and construction committed some errors with reference to individual voters. As it is im-

practical for us to make a recount, the judgment of the trial court finding and determining that Mike Milan was the duly and regularly elected director of The Henrylyn Irrigation District, is accordingly reversed and the cause remanded with directions to the trial court to retry the cause, and make its finding and determination, and render its judgment consistent with the views herein announced.