No. 16,784.

HOLBROOK IRRIGATION DISTRICT *v*. ADCOCK ET AL.
(255 P. [2d] 384)

Decided March 16, 1953.

Mr. CHARLES E. SABIN, for plaintiff in error.

Mr. LAWRENCE THULEMEYER, Mr. PERRY E. WILLIAMS, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

IN A declaratory-judgment action the Holbrook Irrigation District, a corporation, to which we hereinafter refer as plaintiff, sought a judgment against Oliver Adcock, Minnie Adcock, T. J. Adcock, the New York Life Insurance Company, a corporation, and the Farmers Loan Company, a corporation, hereinafter designated as defendants, to obtain a judicial determination of the defendants' right to certain irrigation water as well as the sum due annually from defendants for the use of plaintiff's canals, storage reservoirs and other facilities for the delivery of the same. The judgment generally was in favor of defendants and against plaintiff, and plaintiff brings the cause here by writ of error seeking a reversal.

The Laguna Canal Company, a corporation, was, on May 17, 1909, and for some undisclosed period of time prior thereto, the owner of the Lake Canal and Lake Reservoir, with certain dams, intakes, head-gates, waste-ways and laterals, and certain appropriations and priorities of water, all in Otero county, Colorado. It issued four so-called water deeds to Oliver Adcock, bearing dates of May 17, 1909, May 18, 1909, November 15, 1909, and November 16, 1909, by which deeds it sold and conveyed to Oliver Adcock six water rights entitling him "to the perpetual use of water flowing in said canal or from the storage reservoirs of said canal at the option of the party of the first part, for irrigation and domestic purposes, in an amount to each water right a sufficient amount of water for the irrigation of eighty (80) acres of land, not exceeding in delivery one (1) cubic foot of water per second of time, * * *" limiting the use to the lands described in the deed. By said deed there was sold and conveyed to Oliver Adcock six water rights, which, as is said, entitled him "to the perpetual use of water flowing in said canal or from the storage reservoirs of said canal at the option of the party of the first part, for irrigation and domestic purposes, * * *." This provision is qualified by the following "condition"

in said deed to which Adcock expressly agreed: "Seventh. It is hereby distinctly understood and agreed that in case the canal shall be unable to carry and distribute a volume of water equal to its estimated capacity, either from casual or unforeseen or unavoidable accidents, or if the volume of water in the natural stream prove insufficient from douth, or the use thereof by those having prior rights thereto, to the said party of the first part, or from any cause beyond the control of the party of the first part, then said party of the first part shall not be liable in any way for the shortage or deficiency of the supply occasioned by any of said causes. *If, by reason of such causes, the supply of water being insufficient to furnish an amount equal to all the water rights then outstanding, the said party of the first part shall have the right to distribute such water as may flow through said canal to the holders of such water rights, pro rata, and for the purpose of so doing may establish and enforce such rules as it may deem necessary and expedient.*" (Italics ours.)

It was provided in the May 17, 1909, and November 15, 1909, water deeds, respectively, that the Laguna Canal Company "agrees to keep and maintain said canal in good order and condition; and to sell no more water rights than the estimated capacity of its canal will warrant, and the said first party shall have the right to assess each of the water rights it has sold for the expense of maintaining, repairing and operating said canal, and taxes if any, a sum not to exceed twenty-five ($25) dollars per annum payable on March 1st, of each year for the expenses of the previous calendar year, and any deficit that may have been occasioned the year prior thereto; said amount to be arrived at by apportioning the actual expenditures and deficit, if any as aforesaid pro rata, among the water rights outstanding at the close of the year for which the assessment is made, and the assessment to be upon such water rights only."

We shall refer to the water deeds of May 18, 1909,

and November 16, 1909, as supplemental water deeds. By these deeds The Laguna Canal Company sold and conveyed irrigation water to Oliver Adcock, and by reference the provisions of the May 17, 1909, and November 15, 1909, water deeds were incorporated, and each of these supplemental deeds provided for the payment of a sum not exceeding $12.50 per annum, on March 1st of each year.

Oliver Adcock subsequently conveyed the water rights included in the water deeds of May 17, 1909, and May 18, 1909, to defendant T. J. Adcock, and the water rights in the water deeds of November 15, 1909, and November 16, 1909, to Minnie Adcock, the grantees in said deeds, being now the owners of the water rights therein sold and conveyed. On October 1, 1924, Oliver Adcock and Minnie Adcock, his wife, made and executed their promissory note to the Farmers Loan Company, a corporation, securing the payment of the same by a deed of trust upon the lands described in the water deeds of November 15, 1909, and November 16, 1909. Said note and deed of trust were subsequently sold by the Farmers Loan Company to the defendant the New York Life Insurance Company, and the Farmers Loan Company thereafter had no interest whatever in this litigation. On stipulation of counsel that the indebtedness secured by said deed of trust had been fully paid and discharged, an order of court was entered dismissing the action as to the New York Life Insurance Company.

The Laguna Canal Company, by its deed of December 21, 1909, sold and conveyed to the Holbrook Irrigation District, a quasi-municipal corporation, for the consideration of $110,442.05 to it in hand paid, *the Lake Canal and the Lake Reservoir, as the same were then located, constructed and operated in Otero county, Colorado,* together with all diverting dams, intakes, head-gates, waste-ways and laterals wheresoever situated and then belonging to it; all rights of ways and easements ac-

quired by it for the use of said canal, *reservoir*, dams, intakes, head-gates, waste-ways and laterals thereunto appurtenant; and all appropriations and priorities of water, and rights to appropriations, storage and use of water for all purposes whatsoever from the Arkansas River and then belonging to The Laguna Canal Company. In said deed the property therein sold and conveyed was "Subject to all vested rights heretofore granted by deed of the party of the first part to the use of water from said canal or *reservoir*, and also subject to all contracts heretofore made by the party of the first part [Laguna Canal Company] with water users for the use of water from said canal or reservoir." (Italics ours.)

It is admitted that the Holbrook Irrigation District was organized in 1909, and that Oliver Adcock, then owning the lands and water rights described in his four water deeds hereinbefore mentioned, refused to have his lands included within the boundaries of said water district, and said lands are not now, nor have they ever been, included within the boundaries thereof.

The Holbrook Irrigation District issued its bonds in the sum of $650,000.00, which sum it proposed to expend in the following manner:

| | |
|---|---|
| For the purchase of The Laguna Canal Company | $135,000.00 |
| For the water rights owned by land owners | 365,000.00 |
| For the purchase and development of Dye Lake | 71,000.00 |
| Increase the capacity of Holbrook Reservoir No. 1 (Lake) | 24,000.00 |
| For the enlargement of Lake Canal | 19,000.00 |
| First year's interest on bonds | 36,000.00 |

There now remains an unpaid balance of said bond issue of approximately $200,000.00.

It further appears that from 1936 until 1949, inclusive, the landowners in the Holbrook Irrigation District have been assessed annually sums varying from sixty-one

cents per acre to $1.17 per acre for the purpose of discharging the district's bonded indebtedness, and further from 1933 until 1949 the landowners in the Holbrook Irrigation District have been assessed annually for maintenance and operation of said district, separate and apart from the assessment to pay bonded indebtedness, sums varying from forty cents to $1.50 per acre. The record discloses that the average amount paid to create funds to meet bond interest and principal from the years 1936 to 1949, inclusive, was eighty-seven cents per acre, and the average amount paid by landowners in the district to meet maintenance operation expenses of the canal and reservoirs from the years 1936 to 1949, inclusive, was eighty-five cents per acre, during which time the Adcocks paid $25.00 per eighty acres, and their counsel contend here that in no event could they be assessed more than $37.50 per eighty acres.

In 1909, when the Adcocks acquired title to water rights for the irrigation of certain described lands, the Laguna Canal Company owned but one reservoir, i.e., Lake Reservoir, with only one priority therefor, that priority being No. 2, for 4276 acre feet. Subsequently the Holbrook Irrigation District acquired priority No. 49 for 3196 acre feet; priority No. 20 for 4500 acre feet, and priority No. 43 for 3486 acre feet. Priority No. 49 was for storage in Holbrook Reservoir No. 1 and priorities Nos. 20 and 43 for storage in Dye Reservoir.

Subsequent to acquiring title to the Lake Canal and its various appurtenances, the Holbrook Irrigation District enlarged the Lake Reservoir (Holbrook Reservoir No. 1) so that its storage capacity was increased from 4276 acre feet to 7472 acre feet at an estimated expense of $24,000.00; enlarged the Lake Canal (Holbrook Canal) at an estimated expense of $19,000.00; purchased and developed Dye Reservoir at an estimated expenditure of $71,000.00; and acquired additional storage priorities amounting to 11,182 acre feet of which 3196 acre feet was stored in the enlarged Lake Reservoir (Holbrook

No. 1) and the balance thereof, amounting to 7986 acre feet, was for storage in Dye Lake, purchased and constructed, as ·we have said, by the Holbrook Irrigation District after acquiring title to the Lake Canal and Lake Reservoir.

There is evidence that the storage capacity of Lake Reservoir has been reduced 31.5 per cent since 1914 and that this loss of storage capacity is attributable solely to sedimentation; however, there is no evidence indicating that the Holbrook Irrigation District has not utilized priority No. 2 for 4276 acre feet which it acquired by virtue of its deed from the Laguna Canal Company. Taking into consideration the storage loss by reason of sedimentation, Lake Reservoir (Holbrook No. 1) as originally constructed, now has a storage capacity of 2929.06 acre feet.

Subsequent to 1909, as we have said, the Holbrook Irrigation District acquired priorities Nos. 20 and 43 for Dye Reservoir storage and purchased and constructed Dye Reservoir. Counsel for the Holbrook Irrigation District contends that the Adcocks had no right or interest in these priorities or in Dye Reservoir because they shared in neither the expense of acquiring the priorities nor the expense of constructing Dye Reservoir. From the record it appears that the storage waters in Holbrook No. 1 and Dye Reservoir were co-mingled and run through the Holbrook Canal to the head-gates of the Adcocks, as well as the landowners in the district. It is undisputed that during the years 1914 to 1917, inclusive, and 1928 to 1931, inclusive, no storage waters whatever were delivered under the Adcock water deeds; however, from 1931 until 1949, inclusive, while storage waters from the Holbrook and Dye Reservoirs were co-mingled in the Holbrook Canal, the Adcocks were delivered approximately apportioned one-half as much water from the combined storages of Holbrook and Dye Reservoirs as was delivered to each landowner in the district who owned water rights equal to those owned by the Ad-

cocks. It is to be noted that Oliver Adcock testified that he did not know whether the waters he received for irrigation were from direct flow or from storage; however, he testified that in 1930 he was advised by the superintendent of the Holbrook reservoir that he was not entitled to receive any storage waters from Dye Reservoir or from the priorities awarded to the same.

The trial court, in its declaratory judgment, stated that the two issues to be determined are:

First—The extent of the right of the defendants to receive water for irrigation from the irrigation works and system owned and operated by the plaintiff and,

Second—The extent of the liability of the defendants for the payment of money to the plaintiff annually for the use of water.

The court then analyzes and considers the provisions of the deeds from the Laguna Canal Company to Oliver Adcock, and in its conclusions of law are the following:

"As to the extent of the rights of the defendants to receive water for irrigation from the irrigation works and system of the plaintiff, it is the opinion of the Court that such rights are *fixed by the deeds* in question and require little, if any, declaration by the Court.

"The grantor states in the deeds that it is the owner of the Lake Canal and conveys the perpetual use of water flowing in said canal or *from the storage reservoirs of said canal at the option of the grantor*, in the amounts and under the conditions stated.

"There is no other specification in the contract as to what water shall be available to the grantee and the portion of the printed form intended for certain water right specifications is omitted. The plural form is used with reference to the word reservoir at a time when the *grantor had but one reservoir*. This must be held to indicate that the grantor had in mind the possible acquisition of *other reservoirs;* contemplated selling more water rights than the estimated capacity of the canal would warrant, and reserved the right to furnish the water

either from the canal or *from its reservoirs.* * * * "
(Italics ours.)

The court further found: "As to the extent of the liability of the defendants for the payment of money for the use of said water, it is the opinion of the Court that the power to fix these rates is vested in the Board of County Commissioners and the Court has no jurisdiction to fix future rates, except in case of a review of the action of such board."

Plaintiff's specification of points may be thus summarized: First, that error was committed in determining that the Adcocks were entitled to share proportionately in all waters belonging to the Holbrook Irrigation District exactly the same as were landowners within said district, and, second, in determining that the Board of County Commissioners of Otero county was authorized to fix and determine the annual payment which defendants should make for the use of water from the Holbrook Irrigation system.

Defendants present cross specifications of points, and their argument is confined largely to the second specification assigned by plaintiff.

We shall dispose of the specifications and cross specifications of points in the order mentioned.

1. It should be borne in mind that no dispute has here arisen concerning Oliver Adcock or his grantee's rights to share equally with landowners in the district in the direct flow water passing through the enlarged Lake Canal (Holbrook). It also should be borne in mind that since acquiring title to water rights Oliver Adcock and his grantees never have paid in excess of $25.00 annually for irrigation water for each eighty acres of land irrigated, whereas the landowners within the Holbrook have paid, as we have shown, sums greatly in excess of that amount. Defendants contend that they are entitled to share in all waters from plaintiff's storage reservoirs equally with the landowners in the irrigation district, although they themselves declined to become a

part thereof and thereby share with others in expenditures for new and additional priorities; the enlargement of the canal and existing reservoir; and the purchase and construction of additional storage facilities. Counsel for the Holbrook Irrigation District contends that defendants are only entitled to their pro rata share of the water stored in Lake Reservoir (Holbrook No. 1) as it was constructed at the time of the execution and delivery of the Laguna water deeds to defendants charging sedimentation proportionately to Adcock's water rights. The trial court was rather indefinite in its determination, but the parties hereto have construed the declaratory judgment as a determination that the Adcocks are entitled to share equally with the landowners in the Holbrook District in all waters belonging to the Holbrook Irrigation District, reservoir waters as well as direct flow, and, believing this to be a proper construction, we shall adopt it. It is obvious that if the trial court's determination of this question is as counsel and we construe it to be, then defendants are to be benefited and enriched by reason of the expenditures made by landowners in the Holbrook Irrigation District because of the provisions in their deeds antedating the deed to the Holbrook Irrigation District. The trial court lays great stress on the fact that in the Laguna deeds to defendants the word "reservoirs" is used when, as a matter of fact, at that time the Laguna Company was possessed of but one reservoir. With reference to this the trial court concluded: "This must be held to indicate that the *grantor had in mind the possible acquisition of other reservoirs;* contemplated selling more water rights than the estimated capacity of the canal would warrant, and reserved the right to furnish the water either from the canal or from its reservoirs." (Italics ours.)

We will not indulge in any presumptions or assumptions with reference to what the Laguna Canal Company "had in mind" with reference to the possible acquisition of other reservoirs at the time in 1909 when it executed

its water deeds to Oliver Adcock. The question for determination here is what liabilities the Laguna Canal Company assumed and what rights it conferred to Oliver Adcock by virtue of the water deed. It cannot be successfully contended that under these water deeds Oliver Adcock could have compelled his grantor to acquire new reservoir sites, new priorities, and incur large expenditures in constructing the reservoir in order to supply him with additional irrigation water. There is nothing in the Laguna Canal Company's deed to impose any such liabilities upon it. So long as the Laguna Canal Company delivered, through its canal, Oliver Adcock's proportionate share· as represented by his water rights of all direct flow water running through its canal and his proportionate share of all storage water in Lake Reservoir (Holbrook No. 1), the Laguna Company has complied with all of the provisions of its deed and discharged all liability thereunder. It was only such existing or enforceable rights as Oliver Adcock had on December 21, 1909, that he could insist that the Holbrook Irrigation District respect, assume and discharge. No liability to enlarge the irrigation system was imposed upon the Laguna Canal Company by its water deed to Adcock, and none assumed by the Holbrook Irrigation District. A secret intention or, as the trial court said, what the Laguna Company "had in mind" is wholly beside the question.

Our irrigation district law in force and effect in December, 1909, was Session Laws of Colorado 1905, page 246, chapter 113, and we have said with reference thereto that: "The object of this act, as even a casual reading shows, is compulsorily to provide means, at the expense of those landowners within the proposed district primarily benefited, for bringing into cultivation the arid lands of the state and making them highly productive by the process of irrigation." *Anderson v. Grand Valley Irrigation District,* 35 Colo. 525, 532, 85 Pac. 313.

In the year 1931 our court said: "That acts in this

state concerning irrigation districts were enacted to enable those interested in the development and increased productivity of their lands to organize public and quasi municipal corporations for the purpose of securing water for irrigation, and to provide ways and means of applying that water to the soil. Upon those interested and benefited the burden must necessarily fall, * * *." *People ex rel. v. Milan,* 89 Colo. 556, 560, 5 P. (2d) 249.

 As we have said, counsel for the Holbrook Irrigation District concedes defendants' right to their proportionate share as represented by their water rights to all direct flow river water as the same is running in the Holbrook Canal, and are entitled to their or a proportionate share as represented by their water deeds to all water stored in Lake Reservoir (Holbrook No. 1) which had priority No. 2 for 4276 acre feet at the time the Laguna Canal Company executed its water deeds to Oliver Adcock. There is nothing in the record to indicate that the Holbrook Irrigation District is not exercising its full rights under priority No. 2 and utilizing to the full extent of that priority 4276 acre feet, and, irrespective of sedimentation, so long as the Holbrook Irrigation District avails itself of this priority, Oliver Adcock is entitled to his proportionate share of all water stored thereunder. Priorities Nos. 20, 43 and 49 belong exclusively to the landowners in the Holbrook Irrigation District, as does also Dye Reservoir belong exclusively to the landowners in said district, and the defendants, having determined to remain without the district boundaries and not share in the expense of obtaining enlarged facilities for the irrigation of lands, are not entitled, under their water deeds, to share in the priorities last named or the storage of the water delivered under those priorities. The trial court erred in holding otherwise.

 2. Our attention has not been directed to any statute or decision limiting the right of the Laguna Canal Company to sell and dispose of water rights under its

control or to fix any sum agreeable to it and its grantees as the annual assessment payable for the maintenance of its canal, reservoirs or delivery facilities. The Holbrook Irrigation District, by its deed from the Laguna Canal Company, acquired title to its entire irrigation system and assumed to take title thereto "Subject to all vested rights heretofore granted by deed of the party of the first part [Laguna Canal Company] to the use of water from said canal or reservoir, and also subject to all contracts heretofore made by the party of the first part with water users for the use of water from said canal or reservoir;" As we construe this provision of the deed, the Holbrook Irrigation Company is entitled to charge and collect from Oliver Adcock or his grantees annually an assessment not exceeding $37.50 for such water right as is sold and conveyed by the Laguna Canal Company to Oliver Adcock under its deeds of May 17, 1909, and May 18, 1909, and a sum not exceeding $37.50 annually for water rights conveyed to him by water deeds of November 15, 1909, and November 16, 1909. Having concluded that the Laguna Canal Company was authorized to sell and convey water rights under its irrigation system to Oliver Adcock and the maximum sum which Oliver Adcock was obligated to pay as his proportionate share of the expenses of maintaining, repairing and operating the Laguna Canal (Holbrook), and for taxes, if any such were assessed, it necessarily follows that the trial court erred in determining "that the power to fix these rates is vested in the Board of County Commissioners * * *."

We note that the complaint herein was filed November 15, 1945; the answer on the 18th day of October, 1946; the trial began on February 9, 1950; the judgment entered on November 29, 1950; the cause docketed here on December 24, 1951; came at issue here on May 20, 1952; and was orally argued on October 20, 1952. We call attention to these dates so that the delay in the de-

termination of this cause may not be attributed to this court.

For the errors noted herein, the judgment is reversed and the cause remanded with instructions to the lower court to set aside its judgment in this cause and enter a judgment in favor of plaintiff consistent with the views herein expressed.