82 P.2d 786

In re MARES.

HINES, Adm'r of Veterans' Affairs, v. MARES.

No. 4376.

Supreme Court of New Mexico.

Sept. 3, 1938.

W. F. Cheek, of Albuquerque, for appellant.

Robert A. Morrow, of Raton, for appellee.

BICKLEY, Justice.

The appellant, Frank T. Hines, Administrator of Veterans' Affairs, objected to the allowance of a $200 fee to Manuel Mares, appellee herein, as guardian of the estate of Benjamin Mares, an insane person, amounting to about $12,000, on the ground that under the provisions of Sec. 7, Ch. 60, L. 1935, the guardian was entitled to not to exceed five per cent of the income derived from the United States Veterans' Administration during the accounting period, and five per cent of the revenues derived from financial benefits received from the United States Veterans' Administration in previous years. Benjamin Mares is a World War Veteran. This appeal is from the order of the district court approving the report of the guardian and allowing the $200 fee as requested, to cover an accounting period of thirteen months.

Appellant says the provision of the statute which governs compensation of guardians of the estates of incompetents, Sec. 7, Ch. 60, L. 1935, is as follows: "The district court shall, from time to time, allow the guardian of the estate of an insane or incompetent person a reasonable compensation for his services as such guardian not to exceed five per cent; provided, however, that, in any case where a person is acting as guardian of the estate of a person who receives financial benefits from the United States Veterans Administration, such compensation for services rendered by such guardian with respect to the administration of the income derived from the United States Veterans Administration shall not exceed five per cent thereof annually."

The appellee makes a technical objection to the right of the appellant to have a review of the order in question, but in view of the result of our construction of the statute involved, it is not necessary to discuss such objection.

Appellant says in his brief that he "* * * contends that in no event is the committee entitled to receive more than five per cent of the income annually when such income is derived from the Veterans' Administration and from investments made with moneys derived from the Veterans' Administration, it being the contention of Objector that the second proviso of Section 7, Chapter 60, governs and is a definite limitation upon commissions and fees in all cases where a guardian or committee is acting as such for the estate of a person who receives financial benefits from the United States Veterans' Administration."

The history of legislation in this country concerning compensation to be allowed to trustees, administrators and guardians indicates a policy of allowing such compensation as to the court may seem reasonable and just. In a note on Compensation of Trustees, in 17 Am.Dec. 266, is found the following: "* * * The prevailing opinion in this country on this subject is that expressed by Mr. Justice Story, that 'the policy of the law ought to be such as to induce honorable men, without a sacrifice of their private interests, to accept the office and to take away the temptation to abuse the trust

for mere selfish purposes, as the only indemnity for services of an important and anxious character:' 2 Story Eq.Jur., sec. 1268, n. It is found in practice that in this, as in other human transactions, the best way to secure honest service is to give honest pay."

Perry on Trusts & Trustees, 7th Ed., Vol. 2, § 917, p. 1543, after quoting the above statements, says: "These views have received the sanction of the courts and the legislatures of nearly all the States; and trustees are now entitled to compensation for their time and trouble, either in the form of a commission upon the property under their care, or of a gross sum allowed to them as compensation for their services. * * *" Sec. 918 of the same text is as follows: "The general principle prevails in all the States that trustees are to have a reasonable compensation for their time, trouble and skill in managing the fund and in executing the trust, although there is some diversity in the manner of determining the amount. * * *"

The provisions in the various states vary widely; some allow compensation on the basis of percentage of the estate and some on the basis of income from the estate, but in all of them the intention to pay a reasonable sum for the time, trouble and skill of the guardian in administering the estate is clear. See note 90, page 1544, Perry on Trusts & Trustees; also note in L.R.A. 1917C, page 193.

"The reckoning by a percentage is, however, used only for its convenience; the question is not one of percentage, but compensation for responsibility incurred and labor expended." Perry, Trusts & Trustees, note p. 1548, and cases cited.

Our statutes from earliest times have reflected this policy of leaving the matter to the court. At the 1855–56 Legislative Assembly, an act "In Relation to Lunatics and Habitual Drunkards" was passed and approved. Sec. 36 of chapter 38 thereof was as follows: "The committee, either of the person or estate of a lunatic or habitual drunkard, shall receive such compensation for his services as the court may order and direct, and whenever said lunatic or habitual drunkard is supported at the expense of the county of which he is a resident, said county shall also pay the committee for his services." There has been no change of any importance since that time, the same language in substance being carried forward into C.L.1865, ch. 74, Sec. 36; C.L. 1897, Sec. 1931; Code 1915, Sec. 3407. The statute was amended by Ch. 135, L. 1927 as follows: "The Committee, either of the person or estate of a lunatic or habitual drunkard, shall receive such compensation for his services as the court may order and direct, and whenever said lunatic or habitual drunkard is supported at the expense of the county of which he is a resident, said county shall also pay the committee for his services; *Provided, that in any case where a person is acting as committee or guardian of a financial beneficiary of the U. S. Veterans' Bureau, the compensation or commission for services rendered by such person to such beneficiary with respect to*

*the administration of the income derived from the U. S. Veterans' Bureau, shall not exceed 5 per centum thereof annually."*

So it stood until the 1935 session when the statute now under consideration was enacted. This statute has not departed from a declared policy of allowing a reasonable compensation, but undertakes to introduce limitations upon the exercise of the court's discretion.

It seems clear that under the proviso the court would not be warranted in allowing compensation during an accounting period in excess of five per cent of the financial benefits the ward received from the United States Veterans' Administration during that accounting period for the administration thereof during such accounting period. That is about all that is clear in this statute.

Appellant says that "the proviso refers only to Veterans Administration cases and the compensation therein referred to is to be computed upon income and not corpus." The difficulty arises because of the use of the word "income" in the proviso in determining whether at some stage of the administration the "income derived from the United States Veterans Administration" becomes a part of the corpus.

"Corpus" is "The capital or res of an estate or fund, as distinguished from the income thereof." Ballantine's Law Dictionary. Webster's New International Dictionary defining "income" suggests that "capital is constantly being converted into *income* and *income* into capital."

As we understand appellant he concedes that the "financial benefits" which the incompetent person receives from the United States Veterans' Administration during an accounting period (let us say one year) is "income derived from the United States Veterans' Administration" during such period. What as to the financial benefits which had been received by the incompetent during former years? We agree with the appellant that such "financial benefits" received in former years cannot be considered as income received during the accounting period but that does not mean that the undisbursed portion thereof, which must still be administered or managed by the guardian for the benefit of the ward, drops out of the picture as a basis for computation of reasonable compensation for the guardian's services during subsequent accounting periods. Such financial benefits received during former accounting periods, if unexpended, have, in our opinion, become a part of the corpus.

Appellant seeks to read into the proviso an intention to limit the compensation of a guardian with respect to the administration of income derived from the United States Veterans' Administration to five per cent of the financial benefits or income proceeding from that source *during the accounting period*. There is no reason suggested as to why the guardian is to be rewarded for an efficient management of the money received by the ward from the United States Veterans' Administration during a current accounting period and not rewarded for an equally efficient management of the accu-

mulation of moneys received from the same source in prior years or accounting periods. Appellant's contention may be illustrated thus: If a ward receives financial benefits from the United States Veterans' Administration in the amount of a thousand dollars each year for twenty years, in the twentieth year the guardian could possibly receive five per cent of the amount received during that year, that being the current period, or the sum of $50, although he has had the care, responsibility and increasing labor and trouble of managing an estate of $20,000; the same compensation he was entitled to receive at the end of the first accounting period when he had the management of only $1,000.

Appellant concedes, however, that by liberal construction we might declare that in addition to the five per cent of the financial benefits the ward received during the current accounting period which might be allowed as compensation to the committee for the administration of such financial benefits during that accounting period, the court would be within its powers if it allowed not to exceed five per cent of the income derived during the same accounting period from the investment of financial benefits received from the U. S. Veterans' Administration during former years or accounting periods. If this was the intention of the legislature we are unable to find it within the terms of the statute.

There is another view of the matter which would possibly be within the intention of the legislature.

As we have seen, income is constantly being converted into capital. A fund (corpus, capital) is defined to be "a deposit or accumulation of resources * * * the assets of an estate constitute a 'fund' in the hands of an executor or administrator. * * * The word is merely a name for a collection or an appropriation of money." Ballantine's Law Dictionary defining "fund".

We apprehend that income in the sense that it is a recurrent benefit which proceeds from labor, business or property may be and is, if unexpended, converted into the capital of an estate as an addition thereto.

We think appellant does not pursue the fund created by such financial benefits received from the United States Veterans' Administration far enough. What becomes of such "financial benefits" after they cease to be "income derived from the United States Veterans' Administration" during a particular accounting period? We think such financial benefits when they are no longer to be considered as income pass into corpus or the capital of the estate or fund and the administration thereof continues and the guardian is to be reasonably compensated for his services with respect thereto.

The difficulty arises in considering the limitations sought to be introduced into the first part of the section. The language is: "The district court shall, from time to time, allow the guardian of the estate of an insane or incompetent person a reasonable

compensation for his services as such guardian not to exceed five per cent;"

It is extremely indefinite and uncertain and we know of no rule of construction which will make it definite and certain. The court is authorized to allow reasonable compensation from time to time. From what time to what time? And how often? Such compensation shall not exceed five per cent. Five per cent of what? Is it meant to be a limitation of five per cent of the corpus of the estate or five per cent of the income from the estate? We have seen from the authorities which we have cited supra that had the legislature intended one or the other it would not have been out of line with legislative precedent. But we are unable to ascertain what the legislature meant. Historical considerations do not aid us. There is nothing like this statute to be found in any earlier legislation.

We have used every authorized means to ascertain and give this statute an intelligible meaning yet we are unable to solve the doubt and dispel the obscurity. We cannot, with judicial certainty settle upon its meaning and we are not at liberty to supply, to make one.

██ · The statute being incapable of construction and interpretation is inoperative and void. The law must remain as it was before its enactment. See State v. Partlow, 91 N.C. 550, 49 Am.Rep. 652; Safeway Stores v. Vigil, 40 N.M. 190, 57 P.2d 287.

██ So, going back to the former statutes, we find authority for the allowance of the compensation to the committee in the case at bar. We find no showing that the court abused its discretion or that the compensation allowed was unreasonable. The judgment will therefore be affirmed and the cause remanded, and it is so ordered.

HUDSPETH, C. J., and BRICE and ZINN, JJ., concur.

SADLER, J., did not participate.