263 P.2d 697

**BEATTY et al.**

v.

**CITY OF SANTA FE et al.**

**No. 5615.**

Supreme Court of New Mexico.

Nov. 19, 1953.

Louis C. Lujan, Albuquerque, Walter R. Kegel, Santa Fe, for appellants.

F. A. Catron and Thomas B. Catron III, Santa Fe, for appellees.

McGHEE, Justice.

The plaintiffs, wholesalers of cigarettes in the City of Santa Fe, appeal from the refusal of the lower court to grant injunction against the enforcement of an ordinance of said city (Ordinance No. 1046, enacted June 27, 1951) levying a stamp tax upon the sale of cigarettes within the corporate limits of the city providing stamps are to be purchased and affixed by wholesalers and direct buying retailers, and further providing the revenues to be derived therefrom shall be placed in a special fund to be used exclusively for playgrounds and other similar recreational facilities for juveniles in said city. This ordinance was enacted under authority of Ch. 92, Laws of 1951, which act plaintiffs contend is void or unconstitutional in several respects, and therefore, that the said ordinance is void.

The act under which the ordinance was passed, after reciting the need of the municipalities of this state for added revenues with which to provide adequate recreational facilities to combat juvenile delinquency, provides, in substance, the following:

Section 1 provides municipalities shall have the power to fix and have collected a tax upon the sale of cigarettes sold within their limits; that they shall have power to fix the amount of such tax, but that the tax shall not exceed the limitation therein provided.

Section 2 defines the words, "municipality," "cigarette" and "tobacco."

Section 3 declares the passage of an ordinance in lawful manner providing for a tax upon the sale of cigarettes shall be sufficient to put the tax into effect.

Section 4 empowers the municipalities to provide by ordinance for the manner of payment and collection of the tax and to require filing of terminal reports by sellers of cigarettes showing quantity of cigarettes sold.

Section 5 provides the revenues derived from such tax shall be paid into the municipal treasury and placed in a special fund to be used exclusively for playgrounds and similar recreational facilities for juveniles in the municipality.

Section 6 grants to municipalities power to provide by ordinance for penalties for failure to make reports or the sale of cigarettes without first paying the tax thereon as provided by ordinance.

■ Before undertaking consideration of the particular matters urged here, we take note of considerable argument in the briefs of counsel in this case with respect to the proper rule of construction to be employed with respect to statutes delegating power to levy taxes, the appellants contending all taxation and revenue statutes should be construed strictly in favor of the taxpayer and that the grant of taxing power to municipalities should likewise be so construed, while appellee maintains if under any construction the act is valid, it should be upheld; that as enabling legislation, the act should be loosely construed. Suffice it to say we are in agreement with the sensible statement made by the Minnesota court in Governmental Research Bureau v. Borgen, 1947, 224 Minn. 313, 28 N.W.2d 760, 764:

" * * * statutes imposing taxes and providing means for the collection of the same should be construed strictly in so far as they may operate to deprive the citizen of his property by summary proceedings or to impose penalties or forfeitures upon him; but otherwise tax laws ought to be given a reasonable construction, without bias or prejudice against either the taxpayer or the state, in order to carry out the intention of the legislature and further the important public interests which such statutes subserve."

Appellants' first point is the act, Ch. 92, Laws of 1951, is void for uncertainty, etc., and that the ordinance based thereon is likewise void. The burden of argument is directed primarily at section 1 of the act, which provides:

"Any municipality shall have the power to fix and have collected a tax upon the sale of cigarettes sold within the limits of such municipality, and shall have the power to fix the amount of tax to be paid thereon; provided, that no such tax shall exceed the sum of five mills on each package of ten cigarettes or less; one cent on each package containing more than ten and not more than twenty cigarettes; an additional five mills for each ten cigarettes or less over twenty cigarettes contained in any one package."

Appellants' argument seems upon analysis to fall into four propositions: (1) That while the language of the statute seems to contemplate but a single tax upon only one level of sale between the manufacturer and the consumer, that since the act does not specify who shall pay the tax that as many as three separate taxes could be imposed—upon the wholesaler, the distribu-

tor and the retailer. (2) That since the act is silent on the manner of taxing, great confusion will result due to divergence in methods applied by the municipalities taking advantage of the power granted. (3) That the act does not provide whether the burden of tax may be passed down the line of buyers until the ultimate consumer is reached. (4) That the act does not specify that only sales for resale to the ultimate consumer within the corporate limits of the municipality may be taxed and that, therefore, the municipality may tax sales at one level when the sale to the consumer is made outside its jurisdiction.

■ At the outset it appears the appellants have confused the type of uncertainty which is objectionable in legislation with that uncertainty which must naturally result from eventual possible variations in the exercise by different municipalities of a delegated power. In the objectionable sense, uncertainty is inherent in the enactment itself, resulting from inconsistencies or ambiguities or indefiniteness in the language used, so as to make it impossible to determine and effectuate the legislative intent. See State ex rel. Salazar v. Humble Oil & Refining Co., 1951, 55 N.M. 395, 234 P.2d 339; In re Mares, 1938, 42 N.M. 556, 82 P.2d 786; Continental Oil Co. v. City of Santa Fe, 1918, 25 N.M. 94, 177 P. 742, 3 A.L.R. 398.

■ Of the propositions urged, only the first fairly raises any question of uncertainty in the objectionable sense, and we are unable to give to section 1 of the act the conflict in meaning contended for. This section and the entire body of the act contemplate and empower the municipalities to impose but a single tax, as is evidenced by the repeated use of the word "tax" in singular form and meaning. If there were any doubt as to the intention of the legislature on this question, we have an express limit upon the maximum amount of tax to be imposed on a given package of cigarettes set forth in section 1. That the municipalities are given power thereunder to levy the tax where and in the manner they see fit does not empower them to place it at once upon all levels of sale, and only by strained construction of the act do appellants maintain this argument.

The fallacy of the argument under the second proposition, that the act is uncertain because there may be as many as forty different tax levies and methods of collection in as many municipalities, is best demonstrated by carrying the argument only one step further—to say that the act is uncertain because it is unknown whether all of the municipalities will take advantage of the power to levy the tax. What we are here concerned with is a delegation of power to tax and whether that grant is certain, not whether the particular or ul-

limate effects of the act are specified in or predictable from the act. In State ex rel. Clancy v. Hall, 1917, 23 N.M. 422, 168 P. 715, 719, we recognized that enabling legislation is "necessarily couched in general terms". If each legislative enactment had to be so complete as to be virtually self-executing, and if municipalities were to be allowed no discretion or flexibility in the exercise of their delegated powers to meet the variances of communal existence, an important part of our governmental machinery would be effectively hobbled. We know of no rule of law that an act such as is before us may be struck down solely because the taxpayer may be inconvenienced in meeting the requirements of the various municipalities.

Nor do we view it necessary that the act specify whether the burden of the tax may or may not be passed to the consumer. The concern of the legislature is to grant to the municipalities power to levy and prescribe the manner for collection of a tax upon the sale of cigarettes. If this power is effectively granted, the municipality may act within the limits of the law, insofar as the legislature itself could act. This principle applies to the fourth proposition urged by appellants, that the act does not provide that only sales for resale to the ultimate consumer within the corporate limits of the municipality may be taxed. This again is a matter properly left to the determination of the body to whom

power is delegated. It is given power "to fix and have collected a tax upon the sale of cigarettes sold within the limits of such municipality". The term "sale" is not defined in the act, and must be held to have been employed by the legislature in its ordinary sense. As defined in Webster's New International Dictionary (2d Ed.), its meaning in law is: "Act of selling; a contract whereby the absolute, or general, ownership of property is transferred from one person to another for a price, or sum of money * * *" That a sale is not limited by considerations of "consumption" would seem to need no argument. If the municipality chooses to exercise its power to "fix and have collected a tax upon the sale of cigarettes" at some level above the ultimate consumer, who might purchase his cigarettes outside the limits of the municipality, there is no restriction upon its power to do so, and, indeed, the appellants have conceded it would have been proper for the legislature to do so.

Point is also made if the act be construed to permit municipalities to levy the tax upon those who sell for resale only, it is then in violation of the "equal and uniform" clause of our state Constitution, Section 1, Art. 8, and the "equal protection of the law" clauses of the Fourteenth Amendment to the federal Constitution and Section 18, Art. 2 of the New Mexico Constitution. This point must be ruled against appellants. New York Rapid Transit Corp.

v. City of New York, 1937, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024. Accord: 38 Am.Jur. (Municipal Corporations) § 345; and see, generally, 1 Cooley on Taxation (4th Ed.) § 80. Questions raised under this point are common to those under appellants' fourth point and reference is here made to the portion of this opinion treating such point.

■ In their third point appellants assert the act authorizes the imposition of double taxation. The contention is not well made. By the terms of the act the municipalities are authorized to levy an excise tax upon the *sale* of cigarettes. Even if the act could be construed to authorize a tax levy at each level of sale (and we have held it cannot be so construed) there still would not be a case of double taxation in the prohibited sense, for under principles of taxation, each time a sale occurs, whether by the distributor, wholesaler or retailer, there is a taxable act.

Appellants' fourth point reads as follows:

"That said chapter 92 of the Session Laws of 1951 is unconstitutional, invalid and void as violative of section 1 of article VIII of the Constitution of the State of New Mexico and of the 14th Amendment to the Constitution of the United States in that it creates an arbitrary and discriminatory classification of subjects of taxation, to-wit,

the sale of cigarettes, because said subject of taxation bears no relationship to the purpose for which the revenue therefrom is required to be used, to-wit, for playgrounds and other similar recreational facilities for juveniles."

The determination of this point is governed by the decision of this court in Geo. E. Breece Lumber Co. v. Mirabal, 34 N.M. 643, 287 P. 699, 84 A.L.R. 827, affirmed, 1930, 283 U.S. 788, 51 S.Ct. 352, 75 L.Ed. 1415. In that case the plaintiff (appellee) contended it was not subject to the provisions of an enactment levying an excise tax of five cents per gallon upon the use of gasoline and motor fuel used in the state for any purpose. The proceeds of the tax were by statute devoted to payment of bonds and debentures issued by the state for funds to build and improve state highways, and the lumber company argued that as it used gasoline in its logging operations purchased outside the state and shipped to it in interstate commerce, and as none of such gasoline was used in connection with the public highways, it should not be taxed for the special benefit of use of the highways. The court held the tax imposed was not one laid on the use of public highways, but was a simple excise tax, and further said [34 N.M. 643, 287 P. 701]:

"* * * It is true that a large proportion of the gasoline is used in propelling vehicles over the public

highways, and it is likewise true that the entire proceeds of the tax are devoted, by statute, to the payment of such bonds and debentures as may have been issued by the state to secure a fund with which to build and improve the highways of the state. But this has nothing to do with the matter. This is merely a financial arrangement of the state to make sure provision for the prompt payment of its obligations when they become due. The gasoline tax is known to be a large revenue producer, and the state has simply set it aside to pay principal and interest on its obligations upon which it has borrowed money. The obligation to apply the gasoline tax does not in any way discharge the state from its obligation to pay its debts out of any available revenues. * * *"

The same rule, in substance, was announced by the Supreme Court of the United States in New York Rapid Transit Corp. v. City of New York, cited supra [303 U. S. 573, 58 S.Ct. 728], that "There need be no relation between the class of taxpayers and the purpose of the appropriation."

In the recent case of Gruen v. Tax Commission, 1949, 35 Wash.2d 1, 211 P.2d 651, 670, the precise question was raised on facts almost identical with those presented here. There by statute it was provided a bonus should be paid to the veterans of World War II, with provision for sale and disposal of bonds to secure the money with which to pay such bonus, and further provision that funds with which to meet the obligations under such bonds should be derived from an excise tax on cigarettes. The court held the tax valid as opposed to the contention it bore no reasonable relation to the object for which the tax was to be used. As the decision is on the exact question involved here, and so well reasoned, we quote from it at some length:

"Respondent also raises the point that the cigarette tax bears no relation to the object for which the tax is to be used. That excise tax need bear no relation to the object for which the proceeds are to be expended is well settled. See, New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 58 S.Ct. 721, 82 L.Ed. 1024, and George E. Breece Lumber Co. v. Mirabal, 34 N.M. 643, 287 P. 699, 84 A.L.R. 827.

"These questions are definitely concluded by our following holding in Texas Company v. Cohn, 8 Wash.2d 360, 112 P.2d 522, 529:

"'The familiar rule that legislative classification, in order to come within constitutional limitations, must bear some reasonable relation to the object of the law in which it appears, originated in cases construing regulatory

laws, where it has a natural and logical application. A statute prescribing a regulation in the exercise of the police power has a definite object which concerns the public health, safety, morals, or the like. If such a statute is not universal in its application, but applies only to a particular class, then, in order to satisfy constitutional requirements, the regulation of those within the class, as distinguished from those excluded therefrom, must tend to accomplish the object of the statute. When the rule is applied to a tax law, however, it should be done with due appreciation of the fact that usually the principal object, and very often the sole object of such a law, is to raise revenue for the support of the taxing government. Thus, the state may constitutionally tax one class and exempt other classes if the classification reasonably tends, in some lawful way, to facilitate the raising of revenue.

\*    \*    \*    \*    \*    \*

" 'A state legislature has very broad discretion in making classifications in the exercise of its taxing powers. A classification of commodities, businesses, or occupations, for excise tax purposes, under which the classes are taxed at unequal rates, or one class is taxed and another is exempted, will be upheld as constitutional if it is not arbitrary nor capricious and rests upon some reasonable basis of difference or policy. The difference between the classes need not be great. It may consist of physical and chemical dissimilarity of commodities or difference in the character or manner of their uses. Classification may also be permissible if it is reasonably related to some lawful taxing policy of the state, such as greater ease or economy in the administration or collection of a tax, the selection of a fruitful source of revenue with the exemption of sources less promising, or the equalization of the burdens of taxation. If any such reasonable basis for the classification exists, or conceivably may exist, then the circumstance that there is competition between a commodity or business which is taxed and some commodity or business which is not taxed, does not materially affect the validity of the classification.' "

The annotator in 62 A.L.R. 105, 106 (Taxation of Dealers in Tobacco) states the general rule to be:

"The decisions, almost without exception, support the right of the state or of a municipality to put tobacco dealers in a separate class from dealers in other commodities for taxation purposes, and even to subdivide this class into other classes dependent on the form or kind of tobacco sold, the

amount or quantity of sales, the size of the municipality in which the business is carried on, and the nature of the business, whether wholesale or retail. * * * in almost every case in which the question has arisen, the courts have sustained the validity of statutes or ordinances imposing a tax on cigars, cigarettes, and other forms of tobacco, as against objections based on violation of the rule requiring uniformity of taxation or constitutional provisions guaranteeing equal protection of the law."

Numerous cases upholding the validity of such classification are digested in the above annotation.

Before leaving this point we take note of appellants' statement "if the act had directed the proceeds of the tax should go to the general fund, its validity could not be assailed." The suppression of juvenile delinquency has become such an urgent problem, affecting such a large segment of our people, that it is engaging the attention of not only the municipalities, but also of the state legislatures and the national Congress, the Governors of many of the states, and even the President of the United States. Although not necessary to uphold the act in question, it is doubtful if many of the informed would believe us to be wrong if we classified the raising of funds for the suppression of juvenile delinquency as

being in fact for the general welfare of the people.

■ Appellants' fifth point attacks section 6 of the act under consideration on the basis it violates the Fourteenth Amendment to the United States Constitution and Section 18, Art. 2 of the New Mexico Constitution, in that it is penal in nature and is uncertain in its meaning and fails to clearly inform a person who violates it of what constitutes the crime. Section 6 provides:

"Municipalities shall have the power to provide by ordinance for penalties for the failure to make reports as provided in this Act, and for the sale of any cigarettes without the tax thereon having first been paid as specified by the ordinance of said municipalities. Any person who shall knowingly sell or distribute any cigarettes without first having paid the tax thereon, or who shall fail to make reports as required by the ordinance of the municipality, shall, upon conviction, be fined not less than Fifty Dollars ($50.-00), nor more than Two Hundred Dollars ($200.00) for each offense."

It is argued the first clause of the second sentence of this section, providing a penalty against any person knowingly selling or distributing cigarettes without first having paid the tax thereon, is unrelated to the first sentence of the section giving the mu-

nicipalities power to establish penalties for failure to comply with the provisions of the ordinance levying the tax with respect to the payment of the tax and making of reports thereunder. Appellants maintain the penal provisions of this section may be effective against all who sell cigarettes without regard to whether they come within the class required to pay the tax as provided in an ordinance.

We cannot ascribe to this section the construction contended for by appellants. That a statute shall be construed as a whole is a rule of construction so firmly established that no specific authority need be cited for its application. So viewing the present section, it is obvious its punitive provision is inseparably tied to the specifications of ordinances to be adopted under the act.

The final point made by appellants is the act violates Section 16, Art. 4 of the New Mexico Constitution, in that the subject of the bill is not clearly expressed in its title. The title of the act reads:

"An Act Relating to the Assessment and Collection of Special Tax Upon Cigarettes Sold Within Municipalities; Providing Penalties for Sale Without Payment of Tax; and Limiting the Use of Such Taxes for Recreational Purposes."

It is objected the title does not state the subject of the act is to enable municipalities to tax cigarettes. This court has many times passed upon this contention, and the principles regarding it are so well settled as to require no further discussion. Crosthwait v. White, 1951, 55 N.M. 71, 226 P. 2d 477; Johnson v. Greiner, 1940, 44 N.M. 230, 101 P.2d 183; State v. Gomez, 1929, 34 N.M. 250, 280 P. 251; State v. Miller, 1927, 33 N.M. 200, 263 P. 510; State v. Ingalls, 1913, 18 N.M. 211, 135 P. 1177. The "subject" of this act has to do with a tax upon the sale of cigarettes in municipalities. That the levy, collection and enforcement of the tax are given to municipalities does not change the subject of the legislation, but merely provides the machinery under which the tax may be effected.

The judgment of the lower court is affirmed, and It Is So Ordered.

SADLER, C. J., and COMPTON and SEYMOUR, JJ., concur.

LUJAN, J., not participating.