410 P.2d 193

**Jack DANIELS, Hobdy Gann and James M. Murray, Jr., Plaintiffs-Appellants,**

**v.**

**Finn WATSON, F. L. Heidel, F. D. Caster, George Mansur and R. L. McLean, as Members of the New Mexico Junior College Board, Defendants-Appellees.**

**No. 7987.**

Supreme Court of New Mexico.

Jan. 17, 1966.

Potter & Payne, Lovington, for appellants.

Easley & Pyatt, Hobbs, for appellees.

CARMODY, Chief Justice.

This is an appeal from the judgment of the district court, holding the Junior College Act to be constitutional and dismissing the complaint filed by the plaintiffs.

The "Junior College Act" was enacted by ch. 17 of the Session Laws of 1963 (§§ 73–33–1 to 73–33–20, N.M.S.A.1953), and was partially amended by ch. 16 of the first special session of the legislature in 1964. The Act states its purpose as follows:

> "The purpose of the Junior College Act [73–33–1 to 73–33–20] is to provide for the creation of local junior colleges and to extend the privilege of a basic vocational, technological or higher education to all persons who are qualified to pursue the courses of study offered. Provided further, however, that it is the intent of this legislation not to call upon future legislatures for state financial help." Sec. 73–33–3, N.M. S.A.1953 (Supp.1965).

In general, it provides for the formation of the junior college districts, for the elections concerning the formation of the districts and the selection of the members of the supervisory board, for the means for the operation of the junior colleges and provides for the issuance of bonds. In other words, it seemingly contemplated an authorization and implementation of a post-high-school educational system, separate from that which had heretofore existed in New Mexico.

The case was tried below upon the stipulation of the parties, which may be

summarized as follows. The petition for the organization of the New Mexico Junior College was signed by qualified electors in a number exceeding ten per cent of the votes cast for governor in the 1964 general election; the area of the proposed junior college comprised four school districts of Lea County, viz., those of Tatum, Lovington, Hobbs and Eunice; the Board of Educational Finance conducted a survey and found that all requirements of § 73–33–4.1 had been met; an election was held and a very substantial majority of those voting voted in favor of the establishment of the junior college; the executive secretary of the State Board of Educational Finance declared the district created, and, at a subsequent meeting of a majority of the members of each of the governing boards of the four school districts, five members of the New Mexico Junior College Board were elected, all in conformity with specific provisions of the Junior College Act; thereafter it was proposed to issue three million dollars in general obligation bonds, and the State Board of Educational Finance gave its approval. An election was held on the question of the issuance of the bonds and the vote in favor of the bonds was overwhelming. No contest was filed, and it was agreed that no one was denied the right to vote in either the election creating the district or in the election authorizing the issuance of the bonds. The district is now fully organized and has employed a president and other necessary officers, in anticipation of making its facilities available in September of 1966.

The plaintiffs claim that the Junior College Act is unconstitutional in several respects, and have briefed their contentions under sixteen separate points. For clarity, we will dispose of the arguments in the order presented.

Initially, it is urged that the Act is in violation of art. VII, § 2, because it is a superaddition of requirements to constitutional qualifications for holding office. The statute requires that board members of a junior college district must be owners of real estate within the district. Art. VII, § 2, insofar as pertinent, is as follows:

"A. Every citizen of the United States who is a legal resident of the state and is a qualified elector therein, shall be qualified to hold any elective public office except as otherwise provided in this Constitution. * * *"

Although we note that the present initial board is appointive rather than elective, and therefore the quoted provision of the constitution has no application at this time, nevertheless we feel that the proposition should be answered.

As we understand the argument, plaintiffs assert that junior college board members are public officers as contemplated by the constitution. Actually, the

answer to this claim may be found in Davy v. McNeill, 1925, 31 N.M. 7, 240 P. 482, in which the court determined an irrigation district to be a "public corporation for a municipal purpose" as opposed to a "municipal corporation" or a municipality. We there construed the intent of the framers of the constitution respecting the meaning of the term "public officers" and said that the officers of "a public corporation for a municipal purpose" are not "public officers" within the contemplation of art. VII, § 2. As in Davey, we are here concerned with the definition of that term within the sense of the constitution. In our judgment, a junior college district is a quasi-municipal corporation comparable to the irrigation district with which Davy v. McNeill, supra, was concerned. We think the officers of junior college districts, like those of irrigation districts, are not those contemplated by the constitution. Accordingly, art. VII, § 2 does not restrict the legislature in fixing the qualifications of such board members. See also In re Proposed Middle Rio Grande Conservancy Dist., 1925, 31 N.M. 188, 242 P. 683; Campbell v. Hunt, 1917, 18 Ariz. 442, 162 P. 882; McCarthy v. State, 1940, 55 Ariz. 328, 101 P.2d 449; and Glasco v. State Election Board, 1926, 121 Okl. 119, 248 P. 642.

Plaintiffs rely on Pollack v. Montoya, 1951, 55 N.M. 390, 234 P.2d 336, and Gibbany v. Ford, 1924, 29 N.M. 621, 225 P. 577. Pollack was solely concerned with whether the Chief of Division of Liquor Control was a state officer within the provisions of the venue act requiring that suits be brought against him at the capital. The Chief of Division of Liquor Control is clearly not an officer of a quasi-municipal corporation such as the officers of either the irrigation district with which Davy was concerned, nor of the quasi-municipal corporation with which we are concerned in the instant case. The question in Gibbany was whether a "ward" in a municipality was a governmental subdivision for the purpose of the residence requirement for a municipal alderman within the contemplation of the constitution. It did not purport to define "public officers." We do not consider either of these cases controlling or persuasive.

■ It is next argued that the Act requires board members to reside in the *junior college district, in violation of art. V, § 13,* on the theory that the board members are state officers, not district officers, and therefore their residence cannot be restricted. Since, as we have said, board members are not elective public officers in the sense as used in § 2, art. VII, of the constitution, the legislature may justifiably set their qualifications. Our holding under point one precludes plaintiffs' reliance on State ex rel. Ward v. Romero, 1912, 17 N.M. 88, 125 P. 617. We therefore hold that the residence requirement for board members does not violate either §§ 1 or 2 of

art. VII of the constitution. It is of interest to note that the Junior College Act as originally enacted provided that the board members should be elected from separate districts. However, this was changed with the passage of ch. 277, Sess. Laws of 1965, which is compiled as § 73–33–7, subd. B, and, as the law presently stands, there would not appear to be any provision directing residence in any particular school district within the junior college district.

■ Plaintiffs next maintain that the statute providing that persons must be owners of real estate in the district in order to be eligible to sign a petition calling for the organization of the district, to vote on the establishment of the district, and to vote on the issuance of bonds, is contrary to the provisions of art. VII, § 1. The specific provisions of the statute referred to are §§ 73–33–2, subd. F, 73–33–4, subd. B and 73–33–5, subd. A, N.M.S.A.1953 (Supp. 1965). The constitutional provision, insofar as applicable, reads:

"Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, * * * shall be qualified to vote at all elections for public officers."

It should be apparent that our determination that the members of the board of directors are not elective public officers would seemingly dispose of this argument, because the above-quoted constitutional section deals with elections for public officers and has no application to the signing of petitions or either of the elections in question. Therefore, the cases relied upon by the plaintiffs, Richter v. Martin (1960), Tex.Civ.App., 337 S.W.2d 134; Veatch v. City of Cottage Grove, 1930, 133 Or. 144, 289 P. 494; and Loe v. Britting, 1930, 132 Or. 572, 287 P. 74, are not authority for the position here taken by the plaintiffs. However, compare People ex rel. Shaklee v. Milan, 1931, 89 Colo. 556, 5 P.2d 249, which is very close in point.

We would also observe that Davy v. McNeill, supra, is authority sustaining a provision requiring the ownership of property as an incident to signing the petition for the organization of an irrigation district. There is specific authority for determining this point against the plaintiffs.

■ It is next urged that the general tenor of the entire Act is to require ownership of real estate in order to qualify as an elector, and that such a requirement is violative of art. VII, § 1. This is an enlargement of the argument hereinabove disposed of, and still the answer is the same. In any event, doubt must be resolved in favor of the constitutionality of the statutes,

and we do so here. State ex rel. West v. Thomas, 1956, 62 N.M. 103, 305 P.2d 376; State ex rel. Murphy v. Morley, 1957, 63 N.M. 267, 317 P.2d 317; and El Paso Electric Co. v. Milkman, 1959, 66 N.M. 335, 347 P.2d 1002.

The next five points made by the plaintiffs are to the effect that a junior college district is a school district, and, as such, must be governed by the constitutional provisions relating to schools and school districts.

■ There is a split of authority on this question, but, in our opinion, the cases relied upon by the plaintiffs are distinguishable by reason of the constitutional provisions involved, and even if not, it appears to us that the better-reasoned decisions sustain junior college legislation as being outside the constitutional provisions relating to schools and being solely creations of the legislature. See Goshen County Community College Dist. v. School Dist. No. 2 (Wyo.1965), 399 P.2d 64; and Pollitt v. Lewis, 1937, 269 Ky. 680, 108 S.W.2d 671, 113 A.L.R. 691. In this same connection, we give great weight to the legislative declaration of the purpose of the junior college districts, Hutcheson v. Atherton, 1940, 44 N.M. 144, 99 P.2d 462, and it appears to be plainly manifest that the legislature did not intend junior college districts to come within the general school system. See § 73-33-2, subd. B, N.M.S.A.1953 (Supp.1965).

■ It is next asserted that the combined school district and junior college district debts could exceed the constitutional limitation contrary to art. IX, § 11. Without extending this opinion, it is only necessary to note Albuquerque Metropolitan Arroyo Flood Control v. Swinburne, 1964, 74 N.M. 487, 394 P.2d 998, which contains a complete answer to this proposition and also assembles the authorities on the subject. The following quotation from the Swinburne case is sufficient:

"It is clear that the indebtedness proposed by the Flood Control Authority is not one contracted by either a county, city, town or village or school district, but is one imposed by a special quasi-municipal corporation under legislative authority. The legislature has plenary legislative authority limited only by the state and federal constitutions. Legislation may be validly enacted if not inhibited by one or the other of these documents. * * *"

■ It is then argued that the Act violates art. III, § 1, and art. IV, § 1, as being an unlawful delegation of legislative power, and a violation of the separation of powers. Plaintiffs' theory here is that the authorization to form a junior college district by a petition method is unconstitutional. We need search no further than our own cases for an answer to this contention. This is not a delegation of power, but merely a statutory method for implementing

the legislative determination of a purpose to be fulfilled. See Yeo v. Tweedy, 1930, 34 N.M. 611, 286 P. 970; and In re Arch Hurley Conservancy Dist., 1948, 52 N.M. 34, 191 P.2d 338. It should be apparent that no act of the legislature can be so detailed as to provide for every possible contingency—something must be left to those who desire to take advantage of the broad general statute, and this is exactly the type of legislation we have here. There is no violation of the constitutional prohibition concerning separation of powers. In re Dexter-Greenfield Drainage District, 1915, 21 N.M. 286, 154 P. 382.

█ It is also urged that the provision of the statute authorizing the attorney general to approve or disapprove the bonds is legislation by reference and in violation of art. IV, § 18.

█ Although such a practice is to be condemned when it is applied to matters of substantive rights, the rule is different where the reference is to a procedural matter; there is no constitutional prohibition to the power granted the attorney general in this case because it is procedural only. See Tondre v. Garcia, 1941, 45 N.M. 433, 116 P.2d 584; Fowler v. Corlett, 1952, 56 N.M. 430, 244 P.2d 1122; and Ballew v. Denson, 1958, 63 N.M. 370, 320 P.2d 382.

█ It is argued that the provision of the Act which requires election of board members by "registered" voters is so indefi-

nite as to be invalid because there is no specific provision in the Act for the registration of voters. Here, again, the argument is substantially answered in the point immediately preceding; but, in any event, we find the argument without merit, as the term "registered voter" must certainly refer to one duly registered under our general election laws. We know of no other provision for registration of voters in our statutes, and to require every detail to be incorporated therein would unduly encumber legislation so as to make it burdensome and unworkable. All that is required is language making the statute understandable and sensible, in which event it should be upheld as valid. Gallegos v. Ortiz, 1923, 28 N.M. 598, 216 P. 502.

█ Sec. 73–33–13, subd. B provides as follows:

"The bonds shall be payable semiannually and shall be due and payable serially, either annually or semiannually, commencing not later than three [3] years from their date. Such bonds shall be issued for a term of not less than five [5] nor more than twenty [20] years. The form and terms of the bonds, including provisions for their payment and redemption shall be as determined by the board. If the board so determines, the bonds may be redeemable prior to maturity upon payment of a premium, not exceeding three

per cent [3%] of the principal thereof. The bonds shall be executed in the name of, and on behalf of, the district and signed by the chairman of the board, with the seal of the junior college district affixed thereto, and attested by the secretary of the board. Such bonds may be executed and sealed in accordance with the provisions of the Uniform Facsimile Signature of Public Officials Act [5–9–1 to 5–9–6]. Interest coupons shall bear the original or facsimile signature of the chairman of the board."

Plaintiffs contend that such a provision is void for indefiniteness and rely on State ex rel. Salazar v. Humble Oil & Refining Co., 1951, 55 N.M. 395, 234 P.2d 339.

Admittedly, the draftsmanship of this particular section leaves much to be desired. However, as we have stated, where there is doubt, the constitutionality of legislation should be upheld if it is possible to do so. With this view in mind, and in an effort to give the statute a sensible effect and make it binding (Gallegos v. Ortiz, supra), we find that the legislative intent was to provide that the bonds shall be payable semiannually. Such a determination is also in accordance with the legislative mandate that the Act be given a liberal construction (§ 73–33–20, N.M.S.A. 1953 (Supp. 1965) ).

It is finally argued that the entire Act is void for indefiniteness, insofar as it authorizes the retirement of bonds and the payment of interest, because § 73–33–13, subd. C specifies a maximum annual tax levy of not more than five mills, whereas the following section (§ 73–33–13.1, subd. A) provides that taxes may be levied "without limitation." The above-named sections are companion parts of ch. 16 of the first special session in 1964, and, although certainly not as clear as might be preferred, when the two sections are considered together, the legislative intent is made clear and any seeming conflict vanishes. The ambiguity, if it is such, is not of the same nature as was present in State ex rel. Salazar v. Humble Oil & Refining Co., 1951, 55 N.M. 395, 234 P.2d 339. This is made plain when consideration is given to the fact that § 73–33–13, subd. C, supra, contains language following the five-mill limitation, which specifies that the five-mill limitation may be exceeded in any year that the property valuation in the junior college district declines to a lower level than existed in the year the bonds were issued. Therefore, we do not perceive the indefiniteness or ambiguity as claimed by the plaintiffs and find this point without merit. We would observe, however, that we are only construing the statute as it reads, and by nothing herein said do we express an opinion as to what levy might be permissi-

ble, because the record is devoid of any showing as to what levy is proposed to be made, so this question is not before us.

Our determination that the Junior College Act is constitutional, insofar as the grounds herein urged are concerned, makes it unnecessary for us to pass upon the last point argued by the plaintiffs.

The judgment is affirmed. It is so ordered.

CHAVEZ, NOBLE, and COMPTON, JJ., concur.

MOISE, J., concurring in part and dissenting in part.

MOISE, Justice (concurring in part and dissenting in part).

I am in accord with the opinion except as it disposes of the last two points. I am in full agreement with the rules of statutory construction quoted in the opinion as well as in other cases decided by us. See Bradbury & Stamm Construction Co. v. Bureau of Revenue, 70 N.M. 226, 372 P. 2d 808; State ex rel. Lee v. Hartman, 69 N.M. 419, 367 P.2d 918; State ex rel. Murphy v. Morley, 63 N.M. 267, 317 P.2d 317; State ex rel. West v. Thomas, 62 N.M. 103, 305 P.2d 376. However, I find §§ 73–33–13 and 73–33–13.1, N.M.S.A. 1953, to be so ambiguous, conflicting and contradictory as to make them impossible of reasonable interpretation or application. The majority announce the meaning of the provisions brought in question in this appeal. I regret that I am unable to find in the language used the intent of the legislature that the meaning be what is here held by the court. In fact, I cannot say what the legislative intent was, or that it was one thing rather than another. In this circumstance, the provisions are invalid. Compare State ex rel. Salazar v. Humble Oil & Refining Co., 55 N.M. 395, 234 P.2d 339; In re Mares, 42 N.M. 556, 82 P.2d 786; Continental Oil Co. v. City of Santa Fe, 25 N.M. 94, 177 P. 742, 3 A.L.R. 398; Dewrell v. Kearley, 250 Ala. 18, 32 So.2d 812; Barry v. Board of Directors of Imperial Irr. Dist., 7 Cal. App.2d 412, 46 P.2d 298.

My disagreement goes only to the bonding provisions mentioned. There is no question in my mind that the other attacks made on the Junior College Act are without merit. Also, I am satisfied that the severability clause contained in the act (Ch. 16, § 16, First Spec. Session 1964) is valid, and the remainder of the act, except as to §§ 73–33–13 and 73–33–13.1, supra, is not affected. However, I must respectfully dissent insofar as §§ 73–33–13 and 73–33–13.1, supra, are held valid.