465 P.2d 79

E. D. McKINLEY, Wayne Phelps, Ollie A. Davis, S. W. Atkins, John C. Rolland, L. E. Cozby, and Charles Herrell, Plaintiffs-Appellees,

v.

ALAMOGORDO MUNICIPAL SCHOOL DISTRICT AUTHORITY, a non-profit corporation, Travis Stovall, K. C. Garland, Quinton Daniel, Margaret Arnold, L. L. Stough, and Kenneth Wallin, as members of the Board of Directors of the Alamogordo Municipal School District Authority, Defendants-Appellants,

Alamogordo Municipal School District No. I, and K. C. Garland, Travis Stovall, Quinton Daniel, Margaret Arnold, L. L. Stough, and Kenneth Wallin, as the School Board and governing body of the Alamogordo Municipal School District No. I, and New Mexico State Board of Education, Intervening Defendants-Appellants.

No. 8723.

Supreme Court of New Mexico.

July 14, 1969.

Rehearing Denied Feb. 25, 1970.

Shipley & Whorton, Alamogordo, E. P. Ripley, Santa Fe, for appellants.

James R. Crouch, John M. Lenko, Las Cruces, for appellees.

OPINION

MOISE, Justice.

We are here called upon to pass on the validity of a plan to finance construction of a facility for school purposes proposed to be undertaken pursuant to the provisions of ch. 16, §§ 256 to 269, N.M.S.L. 1967 (§§ 77–17–1 to 77–17–14, N.M.S.A. 1953), and known as the School Leasing Law.

This appeal follows a determination by the trial court that appellant, Alamogordo Municipal School District Authority, hereinafter referred to as the "Authority," should be permanently restrained from pro-

ceeding with the undertaking because (1) the plan authorized by the School Leasing Law and followed in this case permits the creation of a debt in excess of the limits permitted by the Constitution of New Mexico; (2) the plan provides for lease payments which constitute a debt, and no provision for a special fund or for revenue to pay the same is made, except out of state appropriation; and (3) that the plan as contemplated and authorized by statute would permit the levying of ad valorem taxes to make lease payments and would constitute a debt prohibited by the Constitution.

The Authority is a nonprofit corporation organized under the laws of New Mexico. The membership of the Authority is identical with the membership of the Alamogordo Municipal Board of Education, the governing body of the Alamogordo Municipal School District, hereinafter referred to as the "Board" or as the "District." The Board, together with the New Mexico State Board of Education, entered the case as intervenors and have joined in this appeal.

Involved is a plan to secure the erection under the provisions of the School Leasing Law of a school building, together with the necessary equipment and appurtenances thereto, and including but not necessarily limited to total energy, air and heating equipment, referred to in the lease and here as the "building." The Board had arranged to sell to the Authority, for the sum of $200.00, a tract of land containing .101 acres upon which the Authority agreed to build a building which it would in turn lease to the District. The lease term was stated to be until June 30, 1968, with a right to extend it from year to year for additional one-year periods, starting July 1 and ending on June 30, unless either party gave notice within thirty days prior to the end of the term, or any extended term, that it did not choose to extend it. The lease provided for a basic annual rental of $75,000.00, with payments as itemized in the lease to be made on July 1 and December 1 of each year, to and including 1979, and a provision for reduction upon mutual consent of the Authority and the Board. The lease contained an option for purchase of the property by the District at any time prior to expiration of any term, or extended term, if the District was not in default, at a price sufficient to cover the Authority's debt for its investment and all its costs and expenses. The District agreed to budget and appropriate sufficient funds to pay the basic annual rental for each term and extended term the lease was in effect, and that there should be a lien on all of the District's income from all sources, except ad valorem taxes, to cover the rental payments agreed to be made.

The record discloses that the Authority proposed to float bonds, and in connection therewith to execute a mortgage indenture or deed of trust to secure their payment. By the terms of this agreement, the property with its improvements, together with the lease with the District and the rental payments thereon, were given as security. In Art. III of the lease provision was made for the issuance of bonds, called "Revenue and First Mortgage Bonds," totaling $360,000.00, to be paid in twelve years, with the last to mature July 1, 1980.

Although the documents setting forth the arrangements above were very detailed and extensive, the foregoing delineates the most important aspects and should be sufficient for our purposes.

Appellants' first point is directed at the court's finding of fact No. 13 to the effect the Authority has only state appropriations and federal funds available to it out of which to make payments required to be made by it, and that the District pledged state appropriations to guarantee the lease payments. The argument in support of the point is simply that since the Authority and not the District is obligated on the indenture instrument, there is no way the District could possibly have pledged any of its revenues under the terms of the bond indenture, and further, that since ad valorem

taxes were specifically excepted, there was no pledge of tax moneys.

While it is true that the District is not a party to the issuance of the bonds or to the indenture agreement, and possibly the statement in the finding that the District pledged state appropriations under the terms of the indenture is not technically accurate, the true facts are not different in effect. The Authority pledged all of its income, which was to be derived exclusively from rent to be paid by the District, to the payment of the bonds and the District agreed to pay the rent to the Authority and that there should be a lien on state and federal funds received by it to guarantee the payment. It is thus manifest that the District had pledged its state appropriations to the payment of the bonds, even though there was an intervening party who was directly liable thereon, and the District had no direct liability to the holders of the bonds. Be all this as it may, we do not deem the point critical in this appeal.

The real issue is presented under appellants' second point, wherein they complain of the court's refusal to adopt their theory and the following findings presented by them in support:

"13. That the current funds which will be available to the Alamogordo Municipal School District during each year of the terms of the proposed lease under consideration in this cause, will be greatly in excess of the annual rental payments to be called for thereunder."

"15. The proposed lease does not give rise to a present indebtedness for the aggregate amount of all of the annual rentals specified therein."

"16. The rentals called for by the proposed lease are to be paid from operational funds from the United States and from operational funds appropriated for the Alamogordo Municipal School District by the New Mexico State Legislature other than funds accruing from ad valorem taxation.

"17. The Alamogordo Municipal School District has the annual option to renew or not renew the proposed lease.

"18. The annual rent paid is a current expense paid in and for each year."

Briefly stated, it is appellants' position, supported by the requested findings set forth above, that if the rentals for which the District obligated itself in the lease agreement, can be paid out of current operating funds, exclusive of ad valorem taxes, no present indebtedness inhibited by Art. IX, § 11, of the New Mexico Constitution, results and, since the term of the lease is only for one year, renewable annually, all rentals provided for therein are in the nature of current expenses and there is no violation of any constitutional provision.

Article IX, § 11, New Mexico Constitution, reads as follows:

"No school district shall borrow money except for the purpose of erecting, remodeling, making additions to and furnishing school buildings or purchasing or improving school grounds or any combination of these purposes, and in such cases only when 'the proposition to create the debt has been submitted to a vote of such qualified electors of the district as are owners of real estate within the school district and a majority of those voting on the question have voted in favor of creating such debt. No school district shall ever become indebted in an amount exceeding six per cent [6%] on the assessed valuation of the taxable property within the school district as shown by the preceding general assessment."

Appellants' argument proceeds on the basis that rentals are agreed to be paid for no more than one year at a time and, although the District's operational revenues in any year when the lease is in effect are liable for the payment of the rent for that year, there is no possible difference between this liability and that incurred for any other operating expense incident to current school operations. It is pointed

out that there is no pledging of general faith and credit of the District, nor any levy of a general property tax to provide a source of funds for the payment of the rent.

It is confidently asserted by appellants that since the lease is clearly binding only for a year, unless renewed, and then only for the year for which it is renewed, the aggregate amount of the rentals agreed to be paid cannot possibly constitute a present debt of the District within the debt limitation of Art. IX, § 11, supra. Also, they argue that since the indebtedness to be represented by the bonds proposed to be issued is the debt of the Authority and can never be a charge against the District, there can be no question concerning exceeding of the debt limit.

Appellants place principal reliance on the decisions from Indiana where a similar plan was held to be constitutional as not creating a present indebtedness in excess of the constitutionally fixed limit, even though the lease was one for years. Jefferson School Tp. v. Jefferson Tp. School Building Co., 212 Ind. 542, 10 N.E.2d 608 (1937). For other cases discussing this problem, see Annot., 145 A.L.R. 1362, and 71 A.L.R. 1318.

As we see the problems presented by this appeal, the issue to be determined by us is whether or not the plan under which the appellants were proceeding results in the school district borrowing money without submitting the question of whether the debt should be created to a vote of the qualified electors of the district who owned real estate and having the approval of a majority of those voting, and in becoming "indebted in an amount exceeding six per cent [6%] on the assessed valuation of the taxable property within the school district," as prohibited in Art. IX, § 11, N.M.Const., supra. It is conceded that if the bonds to be issued by the Authority constitute indebtedness of the District, there had been no election and the six per cent limit is exceeded. It is argued, however, no election was required

and that the issuance of the bonds does not create a debt, or cause the debt limit to be exceeded because (1) they are issued by a separate entity and the Board is not obligated in any manner; and (2) since the District is indebted only for rentals accruing in any one year and is committed only to paying such rentals from current income, there can be no indebtedness proscribed by the constitutional provision.

After carefully weighing the entire procedure, we have concluded that the statute cannot withstand the attack made upon it. In so concluding, we have given full weight to the oft-repeated rules, that all doubts must be resolved in favor of constitutionality of statutes, Daniels v. Watson, 75 N.M. 661, 410 P.2d 193 (1966), and that a legislative act should not be declared unconstitutional unless the court can say that no reasonable doubt exists that it transgresses the constitution, City of Raton v. Sproule, 78 N.M. 138, 429 P.2d 336 (1967).

Our conclusion is based on the fact that the Authority is clearly nothing more nor less than the School District acting through a public entity (§§ 77–17–12, 77–17–14, N.M.S.A.1953) other than its regularly designated Board. It seems self-evident to us that the procedure authorized by the School Leasing Law is simply an effort by indirection to avoid the provisions of Art. IX, § 11, N.M.Const., when it could not be done directly. This is not permissible. If the plan were approved, we foresee that the limitation of Art. IX, § 11, supra, would be effectively nullified because the Authority would be subject to no limitations, or, if it exhausted its borrowing power, a second, a third, and additional authorities ad infinitum could be created. The crucial question, however, is simply whether the issuance of the bonds becomes an "indebtedness" of the school district. Geographically, the area governed by the School District and that included under the School District Authority are identical. The building of the structure by the Authority to be leased to the District

unquestionably amounts to the performance of an act by the Authority that comes directly within the powers and duties of the Board on behalf of the District (§ 77–4–2 and §§ 77–18–1 and 77–18–2, N.M.S.A. 1953). Compare Water Supply Co. of Albuquerque v. City of Albuquerque, 9 N. M. 441, 54 P. 969 (1898). No money or property is available as security for the payment of the bond indebtedness beyond income to the District and committed to the Authority as rent, together with the property itself. How can it be asserted that the indebtedness is not that of the District?

Can it be said that the Authority is a separate and distinct corporation for purposes not properly within the responsibilities and duties of the Board, as was true in Water Supply Company v. City of Albuquerque, supra, where it was held that the duties of the School Board were separate and distinct from those of the municipality controlled by the city government, and the indebtedness of each was to be considered separately with its individual limitation. The distinction there applied is maintained in our constitution where are found restrictions on county indebtedness, Art. IX, § 10; restrictions and limitations on school district indebtedness, Art. IX, § 11; restrictions on municipal indebtedness, Art. IX, § 12; and limitations, with exceptions thereto, on county and municipal indebtedness, Art. IX, § 13.

To further support our conclusion that the plan provided in the School Leasing Law is unconstitutional, we think it necessary only to discuss two recent cases, in both of which it was determined that separate indebtedness by different bodies did not violate any of the constitutional limitations noted above, and one older case where we concluded otherwise.

In Albuquerque Metropolitan Arroyo Flood Control Authority v. Swinburne, 74 N.M. 487, 394 P.2d 998 (1964), we upheld an act of the legislature which created a flood control district for particular purposes enumerated, and providing for an authority to govern it with numerous powers, including, among others, the power to borrow money and issue bonds in evidence thereof. In that case we determined that the indebtedness authorized by the act would be the indebtedness imposed by a special quasi-municipal corporation created by the legislature, which had plenary power to create it, unless limited by the state or federal constitution, and that it was in no sense an indebtedness of either a county, city, town or village, or school district whose borrowing power is limited by the constitution, Art. IX, §§ 10 to 13, inc., supra. We quote from that case:

"It is well established that counties, municipalities and school districts, even though with overlapping boundaries, are authorized to each create indebtedness, if within its own constitutional limitation, but without regard to either the limitations imposed upon such other overlapping political unit or to the total indebtedness of all such units. It is equally well established that the legislature has power to create other political subdivisions for a public purpose. Constitutional limitations upon the legislative power respecting governmental subdivisions as well as the debt limit thereof have application only to the particular subdivision named in the respective inhibiting constitutional provision. Gutierrez v. Middle Rio Grande Conserv. Dist., 34 N.M. 346, 282 P. 1, 70 A.L.R 1261; Board of Education of Town of Eddy v. Bitting, 9 N.M. 588, 58 P. 395; Russell v. Middletown City School Dist., 101 Conn. 249, 125 A. 641; Ashmore v. Greater Greenville Sewer Dist., 211 S. C. 77, 44 S.E.2d 88, 173 A.L.R. 397."

The second case we note is Daniels v. Watson, supra, wherein we upheld a junior college district as a quasi-municipal corporation, separate, distinct and apart from the general school system, and not within the limitations of Art. IX, § 11, supra, as to indebtedness incurred by it.

The third case is State Office Building Commission v. Trujillo, 46 N.M. 29, 120

P.2d 434 (1941), wherein we held unconstitutional as a violation of Art. IX, § 8, N.M.Const., an act creating a State Office Building Commission for the purpose of constructing an office building to be occupied under lease agreements by state agencies, and authorizing the Commission to borrow money on debentures to be issued by it.

Among other reasons stated for concluding as we did in that case, it was stated that the Commission, being an agency of the state, and the lessees with whom it would be contracting being agencies of the state, the result would be that the state would be dealing with itself and, since leases are contracts where at least two parties are necessary, no contract could result. The situation here is identical. The School Board and the Authority are both agencies of the District and no contract could result from an attempted lease, one with the other. We thus see that in fact the two agencies are only instruments of one corporation—the school district—and any obligations of the District, not voted upon by the owners of real estate, or in excess of the limits provided in the constitution, would be void. We are satisfied that the State Office Building Commission case, supra, controls here rather than the Albuquerque Metropolitan Flood Control case, supra, or the junior college board case, Watson v. Daniels, supra.

The foregoing concerning the requirement of a vote, and the debt limitation, can be avoided only if the evidence of the indebtedness created can truly be said to be payable out of revenue bonds, or bonds payable from a special fund. That such is not the case is made apparent also by the holding in State Office Building Commission v. Trujillo, supra. It is clear from what is said there that to avoid the restraint of the constitution it must appear that payment of bonds is to be made and the obligation fully discharged from sources other than general taxation. In that case, an attempt was made to avoid the restriction by providing that the indebtedness was to be paid exclusively from money received in payment of rent. However, because no provision was made for the agencies to make payments from any source, other than general taxation, it was held that the obligations were not payable from a special fund, and were within the constitutional limitations. This was the characteristic which distinguished the situation from that provided in State ex rel. Capitol Addition Bldg. Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L. R. 878 (1935), where the bonds to be issued were made payable from a special fund resulting from collection of fees on filing of civil actions.

Here the only source of money to pay rent to accrue is state tax proceeds and amounts received from federal sources. As a matter of fact, these moneys are specifically pledged by the terms of the lease. It is quite apparent that the funds to be used are those realized from "general taxation" held unconstitutional in Trujillo, supra, and not funds from a special fund, held valid in Connelly, supra. That ad valorem taxes are not pledged or to be used does not alter the situation, in our view.

From the foregoing it should be apparent that the scheme here is one that will not withstand careful scrutiny in the light of principles heretofore announced and binding on us. The effort to circumvent the constitutional restraints in the manner attempted cannot be upheld. The trial court arrived at a correct conclusion.

The judgment appealed from is affirmed. It is so ordered.

COMPTON, TACKETT and WATSON, JJ., concur.

NOBLE, C. J., not participating.