110

73 So.2d 97

**TAXPAYERS & CITIZENS OF CITY OF
MOBILE et al.**

v.

**BOARD OF WATER & SEWER COM'RS
OF CITY OF MOBILE.
I Div. 602.**

Supreme Court of Alabama.

May 27, 1954.

Geo. J. Moore and Carl M. Booth, Circuit Sol., Mobile, for appellants.

S. P. Gaillard, Jr., Mobile, for appellee.

## PER CURIAM.

There are two appeals shown by this record: one taken by the Board of Water and Sewer Commissioners of the City of Mobile (case No. 601 continued in this Court), and the other by certain Taxpayers and Citizens of the City of Mobile and its police jurisdiction, and the solicitor of the Thirteenth Judicial Circuit (case No. 602 in this Court). The only assignments of error appear to be made in case No. 602. The appellant in case No. 601 has not assigned errors, and to the errors assigned in case No. 602 the appellant in case No. 601 has joined issue by averring that there is no error in the record. This case is supplemental to one heretofore considered in this Court. City of Mobile v. Board of Water and Sewer Commissioners, 258 Ala. 669, 64 So.2d 824.

The instant case is said to be filed under the authority of Act No. 859, approved September 19, 1953, General Acts 1953, page 1148. That statute authorizes certain public corporations and public boards to institute proceedings in the circuit court for the purpose of validating proposed bonds or other evidences of debt prior to their issuance. The prior suit undertook to apply validation proceedings authorized to be conducted by the court as set out in Title 7, beginning with section 169, Code, which only applies to certain municipal corporations and other political subdivisions of the State.

It was questionable then whether the Board of Water and Sewer Commissioners of the City of Mobile, which had been organized under authority of Act No. 775, approved September 11, 1951, General Acts 1951, page 1359, was a political subdivision of the State within the meaning of section 169, supra. But the Court, without deciding that question, proceeded to make a declaration of the legal questions involved under the Declaratory Judgments Act of the State. Code 1940, Tit. 7, § 156 et seq. But the Act of 1953, supra, confers the validation power referred to in that case upon such an organization as the Board of Water and Sewer Commissioners of the City of Mobile.

The instant case has reference to a proposal to issue $10,000,000 of water service revenue bonds of the Board of Water and Sewer Commissioners of the City of Mobile in addition to the series of bonds which were validated in the former suit referred to above. The bonds there proposed to be issued were series A.

They have been issued. The bonds now proposed to be issued are series B for $6,000,000 and series C for $4,000,000, and are subject to the deed of trust and other proceedings which were conducted in respect to that procedure and approved in the former suit. They were all authorized by the Act No. 775, approved September 11, 1951.

The trial court in the instant suit held that the proposed issue constituting series B and C being subject to the same legal status as series A, the proceedings for their consummation were legal and regular and ordered them to be validated.

On the former appeal the payment of the bonds then proposed to be issued were to be secured by a pledge of revenues to be collected by the board under a schedule of rates then in effect and those revenues were by that arrangement pledged under said deed of trust for the purpose of satisfying the obligations of the board thereby incurred. In said former suit this Court held that such pledge of revenue to be collected was not in violation of any constitutional provision brought to the attention of the Court. Those constitutional provisions were particularly sections 94, 222 and 225. In support of that conclusion the Court pointed out that the proposed bonds to be issued did not constitute in any sense of the word an obligation or indebtedness of the city because the board had become the purchaser for a valuable consideration and in good faith of the water and sewer system of the City of Mobile and, therefore, it was not bound by the election provision nor the limit of indebtedness fixed by the Constitution upon municipalities, nor the prohibitions of section 94, supra.

The schedule of rates then in effect was not in question insofar as their reasonableness was concerned. But on March 8, 1954 the Board of Water and Sewer Commissioners passed a resolution which increased the rate applicable alike to users within the police jurisdiction and those within the city limits of Mobile, which rate embraced sanitary sewer service as well as water supply. So that all water consumers were charged a rate based upon the water consumption, but that also included the right to use the sanitary sewer system.

In the instant litigation consumers of the water in the police jurisdiction and outside of the city limits where the sanitary sewer system did not extend, made complaint that it was unfair to charge them the same rate for water that was charged water consumers who used the sewer system, whereas they did not have the opportunity of doing so. Upon a hearing of that question in the circuit court, as appears in the final decree, the court recognized the justice of that claim and refused to validate that increase in the rate insofar as it applied to water consumers within the police jurisdiction and outside the city limits not having the opportunity of using the sewer system.

The record shows that subsequent to that holding by the court the board of commissioners passed a resolution amending the rate schedule adopted March 8, 1954, wherein the water consumers within the police jurisdiction and outside the city limits were charged the same rate for water consumption as applied to them prior to that date. So that under such schedule of rates those consumers of water, not having access to the sewer system, were not required to pay the increased rate set up in the resolution of March 8, 1954. Such complaint is not made by the water consumers residing within the city limits.

That situation disposes of the first controversy with respect to the rate schedule undertaken to be set up by the board for the purpose of securing payment of the bonds now proposed to be issued.

Act No. 859, supra, contains a provision that the validation of such bonds may also include the validity of any tax or other revenue measure or other means provided for the payment of such bonds and the validity of all pledges of revenue for that purpose.

Since we believe that is cognate to the principle of validating the bonds themselves, we see no reason why there may not

be a validation of such revenue measures along with other procedural matter set up for the creation of the bonded indebtedness and the validity of the same.

■ That also involves the question which was sought to be determined and which was determined in the court below as to the power of the board of commissioners after the acquisition of the water and sewer system of the City of Mobile to consolidate both facilities into one, as was attempted to be done by the resolution adopted by the board on March 8, 1954 and amended March 31, 1954. The board is pursuing that plan as a measure of economy and good service and to facilitate its present proposal to issue $10,000,000 of bonds and increase the rate, which increase is to remain in effect insofar as the consumers within the city limits are concerned. This plan is approved by engineering firms whose standing as such is not questioned. The legal authority for doing so is within the terms of section 4(g) of Act No. 775, approved September 11, 1951, under which the board was created and which expressly conferred such authority upon such a board.

■ Appellants in case No. 602, supra, make the point that the Act under which the Water and Sewer Board of the City of Mobile was created, Act No. 775, supra, is invalid because it does not prohibit an officer of the city from being a member of the board. That is based upon the requirement of section 397, Title 37, Code, which makes that prohibition as to *waterworks* boards created under that article of the Code. But the instant board is a *water and sewer* board created by a subsequently enacted statute, supra, which contains no such prohibition. There is no constitutional requirement that an act of the legislature shall conform to a previous act of the legislature. That contention therefore has no support.

■ Another contention is that it violates section 94 of the Constitution for the board to pledge its water revenues to secure obligations incurred to obtain funds to enlarge the sewer system. But section 94 applies only to the power of a city to grant its funds or lend its credit to a private corporation. That is not the status of the water and sewer board. Moreover, water revenues to be obtained by the board will be that of the board, and not of the city. The city does not grant its funds, but has sold its facilities from which funds will arise. There is no constitutional objection to the use of water revenues to enlarge the sewer system. Water Works Board and Sanitary Sewer Board of Montgomery v. Sullivan, 260 Ala. 214, 69 So.2d 709.

■ It is also claimed that the board cannot fix the rates so as to bind the consumer in respect to their reasonable nature. Making such rates for a utility is a legislative act, but it may be delegated by law to an administrative agency free from interference by the court except to preserve constitutional rights. Water Works Board and Sanitary Sewer Board of Montgomery v. Sullivan, supra.

Since the rates fixed by the resolution of March 8, 1954, as amended March 31, 1954, have again been amended in respect to consumers outside the city limits, there is no contention that the rates now provided are discriminatory or unreasonable. No one here contends that they are confiscatory.

■ The final decree of the Circuit Court of Mobile County in this cause held that all the proceedings leading up to the proposed issue of bonds, the fixation of the rates for the service to be rendered and the pledge of the same as security for the bonds, except as indicated with respect to the residents within the police jurisdiction and outside the city limits, were valid and confirmed the same as applied to series B for $6,000,000 and series C for $4,000,000 as described above. We see no reason for withholding our approval of that status and nothing has been pointed out to us on this appeal which reflects upon it.

To the extent indicated above, the decree of the circuit court should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this

114

Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON and CLAYTON, JJ., not sitting.