Theodore R. Kupferman, J-.
Plaintiffs bring on this motion to restrain the City of New York from enforcing amendments to rules and regulations fixing charges for supplying water, promulgated by the Administration of Environmental Protection and approved by resolution of the Board of Estimate on June 30,1970.
*568 The gist of plaintiffs well-constructed legal argument is that the rates charged metered consumers of water have more than tripled since 1968 in an effort to raise city revenue and are not based on fair water charges. In 1968 these plaintiffs challenged a 100% increase in the charge to metered consumers (the first since 1934) and summary judgment was granted to the city. (Wholesale Laundry Bd. of Trade v. City of New York, N. Y. L. J., Dec. 24, 1968, p. 2, col. 2 [Ascions, J.], affd. without opn. 32 A D 2d 744, affd. without opn. 25 N Y 2d 718.) Parenthetically, it should be noted that rates for nonmetered (frontage) water were increased by 100% in 1966 (the first also since 1934) and a challenge to the increase rejected. (Battista v. Board of Estimate of City of N. Y., 51 Misc 2d 962 [Gelliitoee, J.], affd. without opn. 27 A D 2d 986.)
The increase now is a general one which, for these metered plaintiffs who consume large quantities of water in their laundry business, is 75%, from 30 cents per 100 cubic feet to 52.5 cents (prior to 1968 it was 15 cents).
The argument in the prior case by these plaintiffs was discrimination against metered users, and the city, in meeting that point, did a financial analysis estimating costs and maximum collectible revenues from all water consumers at 155.1 million dollars and showing that for metered users constituting 28.9% of all users (it has been estimated from 27.5% to 30%) the increase of 100% was justified.
Plaintiffs now use the city’s then figures to argue that to require a current 75% increase is unconstitutional, because it would mean that in two years the cost has gone from 155.1 to 230 million dollars, and that this is in derogation of the New York State Constitution’s provision which reads as follows: “ No local government shall be prohibited by the legislature (1) from making a fair return on the value of the property used and useful in its operation of a gas, electric or water public utility service, over and above costs of operation and maintenance and necessary and proper reserves, in addition to an amount equivalent to taxes which such service, if privately owned, would pay to such local government, or (2) from using such profits for payment of refunds to consumers or for any other lawful purpose.” (N. Y. Const., art. IX, § 1, subd. [f].)
The city’s reply is that it is entitled to a “ fair return * * * over and above costs of operation and maintenance ” that it is the return on the value of this system, not merely on the city’s equity at any given time, and that revenues are now anticipated at 186 million with costs at 110 million so the return will be 76 million, or 5.5% on an investment of 1,385.5 million.
*569 A fair legal rate of return today, as set by the Banking Board, could be 7%%. (Rachlin & Co. v. Tra-Mar, Inc., 33 A D 2d 370 [App. Div., 1st Dept., 1970]; Rock Transp. Props. Corp. v. Hartford Fire Ins. Co., 312 F. Supp. 341, 348 [S. D. N. Y., MoMahoet, J.].) Using the figures submitted in 1968 it cannot be said that with an investment in the water system of $1,388,139,888 as of June 30, 1967 the proposed water charges are unconstitutional. (Smyth v. Ames, 169 U. S. 466 [1898].)
The financial chagrin of plaintiffs at this turn of events is indeed understandable, but they may take minor solace in the fact that based on the foregoing analysis, the city would forbear from legally increasing its rates in general at an earlier stage than it actually did. To the plaintiffs, a penny saved in this way was a penny earned, but it all comes out in the wash.
The city has cross-moved for summary judgment, which is granted.