"LARAMIE CITIZENS FOR GOOD GOVERNMENT", a nonprofit Wyoming Corporation, Appellant (Plaintiff), Members of the Board of Directors, namely, the Honorable Roy Marion, Francina Wymore, Don Everett, Cynthia Chavez Kelly, Zadabeth Marion, Lloyd Dixon, Iris Brunett, Evelyn Overman, Thomas Murphy, individually, (Plaintiffs),

v.

CITY OF LARAMIE, Albany County, Wyoming; and its City Council, the Honorable Germaine St. John, Mayor, Randy L. Burnett, Charles E. Goudey, Cal Kenneth Hull, Michael S. Kanaly, Donald R. Lamb, W. Hugh McGinley, Larry M. Mickelson, and Max Valdez, in their official capacities as the duly elected members of the Laramie City Council, Appellees (Defendants).

No. 5271.

Supreme Court of Wyoming.

Sept. 22, 1980.

Rehearing Denied Oct. 8, 1980.

E. George Rudolph, Laramie, filed an amicus curiae brief in support of appellant's position.

Michael W. McCall of Borthwick & McCall, Cheyenne, filed an amicus curiae brief on behalf of the Wyoming Ass'n of Municipalities in support of appellees' position.

Michael M. Hoch, Laramie, signed the briefs and appeared in oral argument on behalf of appellant.

Thomas S. Smith, Laramie, signed the brief and appeared in oral argument on behalf of appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

This action was instituted by appellant and eight residents of the City of Laramie for a declaratory judgment, and injunction and similar relief designed to prevent appellee—municipal corporation[1] from implementing and continuing a procedure whereby receipts from an increase in water user rates would be used to finance a "lease" of a ranch now owned by Monolith Portland Cement Company (hereinafter referred to

---

1. The appellees defendants are the City of Laramie and the members of its City Council "in their official capacities." Reference to "appellee" herein will include the council members where appropriate in context.

as ranch) with its appurtenant water rights. The appellant also alleged the rate increase to be discriminatory.

The purpose of the proposed lease[2] is to obtain a source of water to meet anticipated future needs of appellee's municipal water system. The lessor is a nonprofit corporation organized under the general corporation laws of the state. It holds an option from the ranch owner to purchase the ranch, and it intends to finance such purchase by issuing its corporate bonds redeemable by means of income derived from the rental payments to be received from appellee. Appellee counterclaimed for damages resulting from the delay in issuance of such bonds caused by this litigation.

The parties stipulated to most of the pertinent facts, and pertinent documentary exhibits were placed in evidence. The trial court made some additional findings of fact after a trial to it, and it entered judgment against appellant and the other plaintiffs on their complaint. It also entered judgment against appellee on its counterclaim after finding that the claim for damages therein was based on that which would be incurred by the lessor and not by appellee.

Appellant appeals from the judgment as it pertains to its complaint. Although we approve the objective of appellee in acquiring a source of additional water for its future needs, the procedure here attempted for doing so is not pursuant to law. Therefore, we reverse the holding of the trial court in this respect. We do not reverse that holding insofar as it applies to the nondiscriminatory aspect of the increase in the water user rates, but the receipts therefrom must be expended in accordance with a lawful procedure.

Historically, appellee has maintained and operated a municipal water supply and distribution system. The current supply and system is projected to be sufficient to meet the demand therefor until 1985. The ranch is in the immediate vicinity of the City of Laramie. It comprises 11,326 acres and has a 20.1 c. f. s. first priority Laramie River

water right. Additionally, it has considerable potential for development of well water from the ranch lands. The 20.1 c. f. s. water right is appurtenant to approximately 1,502 acres of the ranch land. The 20.1 c. f. s. water right is estimated to be sufficient to supply appellee's water supply needs for 20 to 40 years. However, there is no assurance as to what portion of the water right can be transferred from agricultural to municipal use.

In November 1978, the appraised value of the 20.1 c. f. s. water right was $1 million and appellee offered to purchase it for $800,000. The offer was refused. Appellee believes that it cannot condemn the entire water right because it does not have an immediate need for the entire right. The fair market value of the entire ranch is $2½ million.

The following procedure was inaugurated: A nonprofit corporation (herein referred to as "lessor") was created, with the name "The City of Laramie Facilities and Improvement Authority," with the stated purpose to "promote, assist and extend financial support to effect the desired and necessary facilities and improvements throughout the City of Laramie, Wyoming, and owned or to be owned by the City * * *," and with the provision that nine of the eleven members of the board of directors be the mayor and eight members of the council of the city. Lessor obtained an option from the owner to purchase the ranch for $2,545,024.54 plus $682.19 for each day between September 4, 1979 and the date the transaction is closed after the option is exercised. Lessor proposes to issue its corporate bonds in the amount of $3½ million to finance the purchase price, the bond issuance costs and some well development. The bonds will mature over a period of 15 years. Principal and interest cost will approximate $6 million. A security interest in the ranch will exist in favor of the bondholders until bond redemption. Lessor would lease the ranch to appellee for 15

2. The proposed lease has not been executed pending the determination of this law suit.

years. At the end of the 15–year period, the title would be transferred to appellee. Appellee intended to sell or lease some of the excess ranch acreage. On June 19, 1979, appellee passed Enrolled Ordinance No. 586, which increased the water usage rate to an amount estimated to be sufficient to provide funds for the rental payments, i. e., $465,000.00 a year. The increase would effect typical water user costs as follows:

| Meter Size | Water Used | Present Cost | Proposed Cost | Per Cent Increase |
|---|---|---|---|---|
| 3/4" | 10,000 | 9.17 | 19.36 | 111 |
| 3/4" | 30,000 | 15.37 | 28.96 | 88 |
| 3/4" | 90,000 | 33.97 | 57.76 | 70 |
| 1" | 30,000 | 20.37 | 39.96 | 96 |
| 1" | 90,000 | 38.97 | 68.76 | 76 |
| 1" | 150,000 | 57.57 | 97.56 | 69 |
| 1-1/2" | 90,000 | 49.97 | 95.76 | 92 |
| 1-1/2" | 150,000 | 68.57 | 124.56 | 82 |
| 1-1/2" | 250,000 | 99.57 | 172.56 | 73 |
| 2" | 150,000 | 82.57 | 157.56 | 91 |
| 2" | 250,000 | 113.57 | 205.56 | 81 |
| 2" | 350,000 | 144.57 | 253.56 | 75 |
| 4" | 250,000 | 193.57 | 387.09 | 100 |
| 4" | 350,000 | 224.57 | 437.56 | 95 |
| 4" | 500,000 | 271.69 | 509.56 | 88 |
| 6" | 350,000 | 340.57 | 707.56 | 108 |
| 6" | 500,000 | 387.07 | 779.56 | 101 |
| 6" | 750,000 | 464.57 | 899.56 | 94 |
| 6" | 1,000,000 | 542.07 | 1,019.56 | 88 |
| 6" | 3,000,000 | 1,162.07 | 1,979.56 | 70 |
| 6" | 5,000,000 | 1,782.07 | 2,939.56 | 65 |

Approximately 3,000 signatures of Laramie residents were gathered in approximately four days requesting appellee to rescind Ordinance No. 586 and the entire acquisition plan.

## MOTION TO DISMISS

Appellee moved to dismiss the appeal for the reasons: (1) that appellant had no interest in the subject matter and was not an aggrieved party with a legally recognized interest in the subject matter injuriously affected by the judgment; and (2) that appellant had not submitted a portion of the record on appeal. Subsequently, appellant did submit the portion of the record, the omission of which was one of the grounds for the motion. The motion was denied subject to renewal at the time of oral argument. The motion was renewed at oral argument insofar as it pertained to appellant's standing to appeal.

The first of the facts stipulated to by the parties and incorporated by the trial court into the Findings of Fact is:

"1. That the Plaintiff Corporation, Laramie Citizens For Good Government, is a non–profit corporation formed according to the laws of the State of Wyoming, is in good standing thereunder, and the named Board of Directors are likewise in good standing and authorized to initiate this lawsuit on behalf of the Corporation and the said Corporation has the capacity to proceed herein as a plaintiff."

There is nothing in the record to controvert the agreed upon finding that appellant "has the capacity to proceed herein." The record does not reflect whether or not appellant is a user of appellee's water supply. It re-

flects that the other plaintiffs were members of appellant. It reflects nothing else in this respect.

" * * * [I]n the usual case the question of whether the action is prosecuted in the name of the real party in interest is affirmative matter to be sustained by a party claiming to the contrary. * * *" *Wyoming Wool Marketing Association v. Urruty*, Wyo., 394 P.2d 905, 908 (1964).

Beyond that, appellant's interest in asserting a constitutional claim in this matter has an identity or "nexus" with that of its members. Although such is not a "legal" interest, it is sufficient to qualify appellant as a real party in interest. *National Association for Advancement of Colored People v. State of Alabama, ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Smith v. Board of Education of Morrilton School District No. 32*, 8th Cir. 1966, 365 F.2d 770. See *Apter v. Richardson*, 7th Cir. 1975, 510 F.2d 351; and *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) to the effect that the "legal" interest test is no longer determinative of standing to raise federal constitutional issues. Also see *Washakie County School District No. One v. Herschler*, Wyo., 606 P.2d 310 (1980).

An order will issue, contemporaneously with this opinion, denying appellee's motion to dismiss the appeal.

## ISSUE

Amicus curiae briefs were authorized by the court and filed in this matter by E. George Rudolph in support of appellant's position and by the Wyoming Association of Municipalities in support of appellee's position. Appellee suggests that we not consider some of the contentions presented by Mr. Rudolph and appellant inasmuch as they were not raised in the trial court. The trial court's opinion letter, the findings of fact and conclusions of law and the transcript of proceedings[3] reflect that the basic

issue there presented, and here presented, was, and is: Is the procedure heretofore outlined for acquisition of a source of water supply by appellee one that is pursuant to law? We have no doubt but that the trial court did not have the benefit of all of the law here presented to us and bearing on that issue, but the questions presented to the trial court and to this court were directed to that issue; and if the parties differ in reasons or in the basis for the positions taken by them, such reasons and bases are fundamental to the disposition of the important precedents to be set by this case and they concern questions of general public nature which will affect the interest of the state at large. *Nickelson v. People*, Wyo., 607 P.2d 904 (1980); *Gore v. John*, 61 Wyo. 246, 157 P.2d 552 (1945); *Steffens v. Smith*, Wyo., 477 P.2d 119 (1970); *Meuse–Rhine–Ijssel Cattle Breeders of Canada, Ltd. v. Y–Tex Corporation*, Wyo., 590 P.2d 1306 (1979); *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976). We will, therefore, consider and apply that law which justice and equity requires.

In doing so, we will comment briefly on some aspects of the matter which may not be immediately pertinent to our holding but which may be helpful in further proceedings if the effort to acquire the ranch and its water supply is continued. It may also obviate additional court actions in connection with future efforts at such acquisition. See *Chicago & N.W. Ry. Co. v. City of Riverton*, 70 Wyo. 119, 247 P.2d 660 (1952); *Bartlett v. State*, Wyo., 569 P.2d 1235 (1977); *Goodman v. State*, Wyo., 573 P.2d 400 (1977).

## THE LEASE

The alleged "lease" is not a lease at all. It is a sale with installment payments. Often, the purpose in endeavoring to catalog a transaction involving a public entity as a lease rather than a sale is to circumvent statutory or constitutional debt limitations, e. g., Art. 16, §§ 1, 3, and 5, Wyoming

---

**3.** Immediately prior to turning his attention to administering of the oath to witnesses, the trial court said " * * * the paramount question, the primary question that the Court is interested in is the authority whether they can properly do it under the statute."

Constitution,[4] or it is to avoid statutory or constitutional restrictions on expenditures exceeding annual income, e. g., Art. 16, §§ 2 and 4, Wyoming Constitution; Municipal Budget Act (§§ 9–7–301 through 9–7–316, W.S.1977).[5] If the transaction can be cataloged as a lease, it is said that the only debt or liability incurred is to pay rent for the current year. However, if cataloged as a sale, the debt or liability is immediately incurred for the total purchase price.

█ The intent of the parties is determinative as to whether or not the transaction is a lease or a sale. Some of the factors which reflect an intent to lease rather than to sell are: provision for cancellation of the lease by the lessee at its option at yearly intervals, or the converse provision that the term is for one year with yearly renewal options; provision for payment of a fixed and substantial amount at the end of the term, or the converse that there is no provision for transfer of title at the end of the term without payment at that time of a fixed and substantial amount in addition to rental payments; provision that the lessor pay the cost of upkeep, repair, taxes, etc., the amount of the rental payments being equal to the debt service amount. Contrary provisions are factors which reflect an intent to sell rather than lease. 71 A.L.R. 1318 and 145 A.L.R. 1362, Annotation: Lease of property by municipality or other political subdivision, with option to purchase same, as evasion of constitutional or statutory limitation of indebtedness; *Sager v. City of Stanberry*, 336 Mo. 213, 78 S.W.2d 431 (1934); *Earles v. Wells*, 94 Wis. 285, 68 N.W. 964 (1896); *Davis v. Board of Education of City of Newport*, 260 Ky. 294, 83 S.W.2d 34 (1935); *City of Los Angeles v. Offner*, 19 Cal.2d 483, 122 P.2d 14 (1942); *Mahoney v. City and County of San Francisco*, 201 Cal. 248, 257 P. 49 (1927).

█ In this instance, the appellee must pay the semiannual installments for the 15–year period. No additional consideration is

---

4. Art. 16, § 1, Wyoming Constitution provides:
   "The State of Wyoming shall not, in any manner, create any indebtedness exceeding one per centum on the assessed value of the taxable property in the state, as shown by the last general assessment for taxation, preceding; except to suppress insurrection or to provide for the public defense."
   Art. 16, § 3, Wyoming Constitution provides:
   "No county in the State of Wyoming shall in any manner create any indebtedness, exceeding two per centum on the assessed value of taxable property in such county, as shown by the last general assessment, preceding; provided, however, that any county, city, town, village or other sub division thereof in the State of Wyoming, may bond its public debt existing at the time of the adoption of this constitution, in any sum not exceeding four per centum on the assessed value of the taxable property in such county, city, town, village or other sub–division, as shown by the last general assessment for taxation."
   Art. 16, § 5, Wyoming Constitution provides:
   "No city or town shall in any manner create any indebtedness exceeding four per cent (4%) of the assessed value of the taxable property therein, except that an additional indebtedness of four per cent (4%) of the assessed value of the taxable property therein may be created for sewage disposal systems. Indebtedness created for supplying water to cities or towns is excepted from the limitation herein.
   "No county shall in any manner create any indebtedness exceeding two per cent (2%) of the taxable property therein.
   "No school district shall in any manner create any indebtedness exceeding ten per cent (10%) on the assessed value of the taxable property therein for the purpose of acquiring land, erection, enlarging and equipping of school buildings.
   "All limitations herein shall refer to the last preceding general assessment."

5. Art. 16, § 2, Wyoming Constitution provides:
   "No debt in excess of the taxes for the current year, shall in any manner be created in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people and by them approved; except to suppress insurrection or to provide for the public defense."
   Art. 16, § 4, Wyoming Constitution provides:
   "No debt in excess of the taxes for the current year shall, in any manner, be created by any county or sub–division thereof, or any city, town or village, or any sub--division thereof in the State of Wyoming, unless the proposition to create such debt shall have been submitted to a vote of the people thereof and by them approved."
   The Municipal Budget Act requires annual preparation and approval of the budgets of political subdivisions, including cities, and prohibits expenditures which are not in general accordance therewith.

to be paid at the end of the 15–year period. Appellee cannot terminate the transaction at yearly intervals. The rental amount is gauged by the debt service amount. Appellee pays all taxes and assessments, if any, and other construction and operating expenses. Appellee will not have practical use and benefit of the property during the first portion of the lease. The manifest intention is for a purchase of the ranch and not for a lease of it.

Therefore, in our consideration of this matter, we recognize the "lease" as an installment sale and purchase with the immediate obligation on the part of appellee to pay the full purchase price.

We also note that the purchase would be subject to the security interest in the ranch held by the bondholders through the trustee. Foreclosure could occur if lessor defaulted in the bond payments. The Preliminary Statement on issuance of the bonds (the prospectus) states that in the event of default in the payment of principal and interest on the bonds:

" * * * the Trustee may, under certain circumstances, operate and/or sell the Project to protect the security interest of the bondholders under the Indenture."

In case of default by lessor, the lease (purchase contract) gives appellee the opportunity to acquire clear title to the ranch by "paying in full and discharging the principal of and interest on" the bonds of the lessor.

## BONDS

█ A discussion of the bonds to be issued in this transaction presents the question as to whether lessor is an entity separate and apart from appellee or whether lessor is in truth an alter–ego of appellee.

If lessor is an alter–ego of appellee, it is subject to legal limitations applicable to appellee. Since the obligation incurred is in an amount in excess of the taxes for the current year and was not approved by a

vote of the people, on its face the transaction is a violation of Art. 16, § 4 of the Wyoming Constitution. However, "revenue" or "special fund" bonds are not subject to constitutional or statutory debt limitations. *Frank v. City of Cody*, Wyo., 572 P.2d 1106 (1977); *Snyder v. City of Cheyenne*, 79 Wyo. 405, 334 P.2d 750 (1959).

The definition and nature of "revenue" bonds are set forth in 64 Am.Jur.2d, Public Securities and Obligations, § 420, pp. 446–447, as follows:

"Generally speaking, revenue bonds are bonds issued by a state or a political subdivision in connection with the construction, maintenance, or operation of some enterprise or project, such as a publicly owned or operated utility, a bridge, or a dormitory for a state university, etc. The statutes under which the bonds are issued, and the terms and conditions in the bonds themselves, state clearly that they are payable solely from the income, revenue, or proceeds of the enterprise or project to acquire, build, or operate which they were issued. Hence, they are bonds payable from a special fund, are not the general obligations of the issuing public body, and are not payable from its general resources raised by taxation. Such bonds, payable from special nontax funds, and especially if they are payable only from the revenue of the particular improvement to be acquired, constructed, or operated with the proceeds of such bond issue, are held, under the 'special fund doctrine,' not to create an indebtedness of the issuing body within the meaning of debt limit provisions. * * *"

Treating lessor as an alter–ego of appellee, i. e., treating the transaction as if the purchase of the ranch were made by appellee directly from the owner with the bonds issued directly by appellee as revenue bonds, the transaction would, nonetheless, be illegal. Such bonds would not be subject to constitutional debt limitations,[6] but they

---

6. Art. 16, § 5, Wyoming Constitution (see footnote 4) contains a specific exemption from the 8% of assessed valuation debt limitation for

"indebtedness created for supplying water to cities." The "revenue" bond doctrine would make inapplicable the limitation contained in

would be subject to other limitations and conditions imposed by law. *Whipps v. Town of Greybull*, 56 Wyo. 355, 109 P.2d 805 (1941). The legislature has imposed such a limitation applicable to this transaction.

Section 15–7–101(a), W.S.1977 provides in pertinent part:

"(a) In addition to all other powers provided by law, any city or town may make public improvements, for which bonds may be issued to the contractor or be sold as provided in this chapter:

\* \* \* \* \* \*

"(ii) To establish, construct, purchase, extend, maintain and regulate a system of waterworks, for the purpose of supplying water for extinguishing fires and for domestic, manufacturing and other purposes:

\* \* \* \* \* \*

"(B) \* \* \* All water rent collected except the amount required to pay the expense of maintaining, extending, and improving the waterworks, shall become a part of the water bond fund, and be applied only to the payment of the principal and interest of the bonds issued for the construction, purchase, maintaining or extension of the waterworks.

"(iii) To establish, construct, purchase, extend, maintain and regulate a system of ditches, aqueducts and reservoirs, for supplying water to its inhabitants, and for its streets, parks and public grounds for irrigation purposes. To carry out this power a city or town has the same jurisdiction and right of condemnation as provided in subsection (a)(ii) of this section, and [to] prescribe and regulate rates for the use of water and enact ordinances for their enforcement and collection;

\* \* \* \* \* \*

Art. 16, § 4, Wyoming Constitution (see footnote 5).

7. See §§ 15 7 112(b) and 15 7 440, W.S.1977.

"(viii) To contract for, purchase and hold lands and water rights \* \* \*."

And § 15–7–102(b), W.S.1977 provides:

"(b) No bonds may be issued for the purposes provided in this article until the proposition to issue them has been submitted to, and approved by, the qualified electors of the city or town at a regular or special election which shall be called, conducted, canvassed and returned in the manner provided for municipal bond elections by the general election laws of Wyoming."

The plain language of a § 15–7–101(a)(ii)(B) is descriptive of "revenue" bonds. It is a clear expression of intention to have the provisions of the article of which it is part apply to "revenue" bonds. The requirement in § 15–7–102(b) that bond issuance be subject to approval of the electors is applicable to "revenue" bonds issued for the purposes set forth in the article. Such is fortified by the fact that the authorization for issuance of "revenue" bonds for sewage systems and for auditoriums, incinerators, gas distribution systems and self–liquidating recreational facilities [7] is conditioned upon their submission to the electors in accordance with the requirements of § 15–7–102(b), supra.

All bonds for the acquisition of a water supply by a city, including revenue bonds and regardless of the amount of debt incurred, are subject to the legislative requirement set forth in § 15–7–102(b) that they be approved by the electors. The bonds of lessor, as an alter–ego of appellee, would be subject to this requirement and would not be lawful without such approval.[8]

If lessor be treated as a separate and distinct entity from appellee, legal provisions applicable to public bonds, revenue or otherwise, need not be considered. The bonds would not be those of appellee. They would not be a public obligation. Lessor could not then issue bonds for or on behalf of appellee. Only appellee could do that.

8. The legislature specifically authorized the issuance of revenue bonds by joint powers boards without voter approval. Section 9–1–134(a)(iii), W.S.1977. *Frank v. City of Cody*, supra.

" * * * The town, not the Board of Public Utilities, had power to pledge the revenues from the waterworks and sewer works in connection with the issuance of revenue bonds, but these bonds could be issued only pursuant to a vote of the people. * * * " *Town of Worland v. Odell & Johnson*, 79 Wyo. 1, 11, 329 P.2d 797, 800 (1958).

See *McKinley v. Alamogordo Municipal School District Authority*, 81 N.M. 196, 465 P.2d 79 (1969).[9]

Treating lessor as an entity separate from appellee and from appellee's standpoint, the funds derived, or to be derived, from the water user charges are not directly earmarked to redeem the bonds. They are earmarked to pay the installments on the purchase price of the ranch. It then could be said that the requirement for elector approval for issuance of bonds relating to waterworks as provided in § 15–7–102(b) is not applicable to this transaction since appellee is not issuing bonds.

However, it is acknowledged that lessor has no separate economic base. The bond sale is attractive only if issued "on behalf of" appellee. The consideration running from appellee to lessor for the purchase of the ranch is the exact amount necessary for redemption of the bonds. As already noted, a foreclosure could occur. Except during the last few years of the 15–year period, appellee would have no funding for its protective right to pay the outstanding principal and interest on the bonds. The only other interest to be acquired by appellee in case of default is a speculative interest which might result from a bid at foreclosure sale in excess of the debt. There is a definite chance of loss by appellee on lessor's debt to the bondholders. Appellee's credit is loaned in violation of Art. 16, § 6, Wyoming Constitution.[10] *Frank v. City of Cody*, supra.

Appellee argues that lessor is a separate entity, but it proposes that it issue bonds "on behalf of" appellee and it points to the alter–ego affinity resulting from members of the council and the mayor of appellee being the majority of the directors of lessor. Appellee cannot have it both ways.

The purpose of lessor's position in the contemplated procedure has not been adequately explained. The position is not similar to that of a foundation or trust established to assist a public entity in fundraising or public relations matters. A direct purchase by the city of the ranch with funding through revenue bonds approved by the electors[11] would seem to accomplish the desired result. If lessor's position was established as a separate entity to accomplish something indirectly which appellee could not do directly, the procedure is not permissible.

## HOME RULE

■ Appellee argues that Art. 13, § 1 of the Wyoming Constitution authorizes the procedure here attempted. Adopted as a constitutional amendment in 1971, it gives "home rule" to cities and towns. It provides in pertinent part:

"(a) The legislature shall provide by general law, applicable to all cities and towns,

"(i) For the incorporation of cities,

"(ii) For the methods by which city and town boundaries may be altered, and

---

**9.** The same reasoning is here used as was used by the trial court in entering judgment against appellee on its counterclaim.

**10.** Art. 16, § 6, Wyoming Constitution provides:

"Neither the state nor any county, city, township, town, school district, or any other political sub–division, shall loan or give its credit or make donations to or in aid of any individual, association or corporation, except for necessary support of the poor, nor subscribe to or become the owner of the capital stock of any association or corporation. The state shall not engage in any work of internal improvement unless authorized by a two–thirds vote of the people."

**11.** There should be no hesitancy in affording the people the right to approve or reject actions taken, or to be taken, on their behalf by governmental agencies. Such right is one of the fundamental propositions of our form of government.

"(iii) For the procedures by which cities and towns may be merged, consolidated or dissolved; provided that existing laws on such subjects and laws pertaining to civil service, retirement, collective bargaining, the levying of taxes, excises, fees, or any other charges, whether or not applicable to all cities and towns on the effective date of this amendment, shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance.

"(b) All cities and towns are hereby empowered to determine their local affairs and government as established by ordinance passed by the governing body, subject to referendum when prescribed by the legislature, and further subject only to statutes uniformly applicable to all cities and towns, and to statutes prescribing limits of indebtedness. The levying of taxes, excises, fees, or any other charges shall be prescribed by the legislature. The legislature may not establish more than four (4) classes of cities and towns. Each city and town shall be governed by all other statutes, except as it may exempt itself by charter ordinance as hereinafter provided." [12]

It empowers cities and towns to "determine their *local* affairs and government" ·(emphasis supplied). But it excepts certain specified matters from this grant of authority, including having to do with "limits of indebtedness," "levying of taxes, excises, *fees, or any other charges*" (emphasis supplied), and "statutes uniformly applicable to all cities and towns." The Municipal Budget Act and §§ 15–7–101(a) and 15–7–102(b), supra, are statutes uniformly applicable to all cities and towns, and Art. 13, § 1, Wyoming Constitution, does not provide an exemption from compliance with them. And, it does not exempt cities and towns from

the applicability of other constitutional provisions including Art. 16, § 4, Wyoming Constitution, which limits the creation of a debt by a city to that not in excess of taxes for the current year.

The "home rule" provision of the constitution does not pertain to the dispositive factors in this case.

■ Appellee contends that such provision authorizes cities and towns to legislate on all subjects as long as such legislation is *not in conflict* with statutes uniformly applicable to all cities and towns or those prescribing limits of indebtedness.[13] But the language of the provision is much broader. Plainly and without ambiguity it makes such legislation "subject to" statutes uniformly applicable to all cities and towns and to those prescribing limits of indebtedness.

"* * * The term 'subject to' means 'subordinate to' or 'subservient to.' * * *" *Kelly v. Smythe*, 61 Wyo. 209, 226, 157 P.2d 289, 296 (1945). See *Chandler v. Hjelle*, N.D., 126 N.W.2d 141, 147 (1964). Legislation by cities and towns must not conflict with statutes uniformly applicable to cities and towns, and it must be subordinate and subservient to such statutes. Each enactment must be measured in its own right to determine if it pertains to a "local affair" and if it is "subject to" statutes uniformly applicable.

As previously said, the "home rule" constitutional provision does not apply to the dispositive factors of this case. Legislation by appellee to implement or engage in the proposed procedure to purchase the ranch would be subject to the uniformly applicable §§ 15–7–101(a) and 15–7–102(b). In this instance, the procedure is subordinate or subservient to such statutes. In fact, it is in direct conflict therewith.

12. Subsection (c) of Art. 13, § 1 of the Wyoming Constitution makes provision for passage of charter ordinances by the cities and towns by which an election can be made "that the whole or any part of any statute, *other than statutes uniformly applicable to all cities and towns and statutes prescribing limits of indebtedness*, may not apply to such city or town." (Emphasis supplied.)

13. Art. 13, § 1, Wyoming Constitution also specifically denies authority to cities and towns to legislate regarding civil service, retirement, collective bargaining, levying of taxes, excises, fees or any other charges.

## DISCRIMINATION IN RATES

The record fully supports Finding of Fact No. 43 of the trial court:

"43. That although some of these Plaintiffs will have their water bills substantially increased as a result of the increase in the meter fee and water rates, and that various users of water will incur different percentages of increase there is no evidence submitted that these increases are unreasonable or that they do discriminate as against these parties in such manner as to overcome the presumption of reasonableness to which Ordinance No. 586 is entitled."

■ The fixing of water rates is a legislative act. *Taxpayers & Citizens of City of Mobile v. Board of Water & Sewer Com'rs of City of Mobile*, 261 Ala. 110, 73 So.2d 97 (1954); *Glendale Estates, Inc. v. Mayor and City Council of Americus*, 222 Ga. 610, 151 S.E.2d 142 (1966). Rates must be fair, reasonable, uniform and nondiscriminatory. *Western Heights Land Corporation v. City of Fort Collins*, 146 Colo. 464, 362 P.2d 155 (1961); *Conner v. City of Elmhurst*, 28 Ill.2d 221, 190 N.E.2d 760 (1963). If the fixed rates meet these requirements, the discretion is properly exercised in establishing such rates. *Faxe v. City of Grandview*, 48 Wash.2d 342, 294 P.2d 402 (1956); *Barr v. First Taxing District of City of Norwalk*, 151 Conn. 53, 192 A.2d 872 (1963). Classification of users for the purpose of rates must be reasonable and based on such factors as amount of water, etc., received, type of service, time of use, cost of service, etc. *Boynton v. City of Lakeport Municipal Sewer District # 1*, 28 Cal.App.3d 91, 104 Cal.Rptr. 409 (1972); *Caldwell v. City of Abilene*, Tex.Civ.App., 260 S.W.2d 712 (1953). Normally, the rates charged should result in a fair return on the investment, taking into consideration the cost of construction and operation, necessary expansion, reserve for depreciation and debt retirement. *In re Village of Stowe Electric Department*, 134 Vt. 559, 367 A.2d 1056

(1976); *Wholesale Laundry Board of Trade, Inc. v. City of New York*, 64 Misc.2d 567, 315 N.Y.S.2d 715 (1970); *Barr v. First Taxing District of City of Norwalk*, supra; *Wolgamood v. Village of Constantine*, 302 Mich. 384, 4 N.W.2d 697 (1942); *Western Heights Land Corporation v. City of Fort Collins*, supra.

The economic factors of this particular service should form the basis for reasonable and uniform rates. Standards of American Waterworks Association (referred to by appellee) are of little value in this respect unless they are shown to reflect the economic factors of this service. The fact that an increase differs in percentage as to various classes of users is likewise of little value in this respect. The former charges may not have been proper. Usual rate fixing evidence is not in the record.

■ Nonetheless, there is nothing in the record to reflect discrimination or unreasonableness in the charges. The burden of proof is on the party contesting the reasonableness and nondiscriminatory nature of the charges. *Russell v. City of Pacific Grove*, 54 Cal.App.3d 53, 126 Cal.Rptr. 371 (1975); *King County Water District No. 75 v. City of Seattle*, 89 Wash.2d 890, 577 P.2d 567 (1978). The burden was not here met by appellant.

## CONCLUSION

The transaction was a sale and not a lease. If lessor was an alter–ego of appellee, the bonds (even though "revenue" or special fund bonds) could be issued only after approval by the electors, pursuant to § 15–7–102(b), W.S.1977. If lessor was a separate entity from appellee whereby the bonds were not those of appellee, elector approval would not be necessary.[14] But appellee would be loaning its credit to the entity in violation of Art. 16, § 6 of the Wyoming Constitution, and it would be attempting to do indirectly that which it could not do directly. Therefore, the procedure here attempted and contemplated is

14. The provisions of § 15 7 101(a)(ii)(b), W.S. 1977, may be said to mandate the use of the excess water use receipts only for a *bond* fund when a purchase of water supply is contemplated and not for installment payments on a direct purchase thereof.

illegal regardless of whether lessor is considered an alter—ego of appellee or whether it is considered a separate entity. The procedure is not authorized by Art. 13, § 1 of the Wyoming Constitution pertaining to "home rule." The water rates established by Enrolled Ordinance No. 586 are not discriminatory, but, of course, they may become unreasonable if they provide an excessive return on the investment. And such will probably occur if appellee does not take immediate action to acquire the ranch through lawful means.

Reversed and remanded with instructions to enter a permanent injunction against appellee enjoining it from proceeding further in the transaction with lessor for lease or purchase of the ranch from lessor. Appeal was not taken from the judgment on the counterclaim and, therefore, the judgment with respect thereto is final.

## ORDER DENYING MOTION TO DISMISS

Appellees' Motion to Dismiss the appeal in this matter having been considered as reflected in the opinion of the court issued contemporaneously with this order, it is

ORDERED that said Motion be, and the same hereby is, denied.